Barbara Ann WASHINGTON, individually, and as Guardian Ad Litem for: Christa M. Washington, a minor, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 88–5728.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 1988.

Decided Feb. 21, 1989.

Barbara W. Ravitz, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for plaintiff-appellant.

Robert S. Greenspan, Marc Richman, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Barbara Ann Washington brought suit on her own and her minor daughter Christa's behalf against the United States of America (the government) and two members of the United States Navy, Larry Bartole and Neil Cleaves, for injuries suffered by Christa at the U.S. Naval Housing Quarters, Point Mugu, California. Jurisdiction was under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The mother's claim was dismissed for lack of subject matter jurisdiction because she had not filed an administrative tort claim with the Navy, 38 U.S.C. § 2675(a). Christa's claim was tried to the court, which made findings of fact

and conclusions of law and entered judgment for the government. Christa Washington appeals. We reverse.

## FACTS

At 6:40 p.m., September 19, 1980, in the base housing facilities of the Navy at Point Mugu, California, two active duty members of the Navy, Larry Bartole and Neil Cleaves, were attempting to start Cleaves' 1964 Rambler. The car was in the garage assigned to Cleaves. It had not been operative for several months. Cleaves had given it a basic tune-up and oil change and it still would not run.

The main garage door was closed; a side door was open. Cleaves was in the car, turning on the ignition when he thought appropriate. Bartole tried to prime the carburetor by pouring gasoline from a coffee can into the throat of the carburetor. The engine back-fired. Flames shot from the carburetor. Bartole jerked the can back and spilled gas over his hand. His hand caught fire. He ran to the side door, tripped, and sent the blazing can out the door into the yard. Christa Washington was just outside the door. She was struck by the fiery gasoline. It severely burned the right side of her head, face and neck and right shoulder, arm, wrist and hand.

At the time of the incident Bartole and Cleaves were on authorized liberty status and had completed their ordinary work for the day for the Navy. Christa, aged ten, was the daughter of a serviceman residing in a naval housing unit at Point Mugu. Her family's unit was directly across from Cleaves'. The great majority of the 567 housing units at the base were occupied by families with more than one child.

A Navy regulation provided that "only repairs of a minor nature, such as basic tune-up, lube adjustments and oil changes may be accomplished in public quarters, garages or the hobby shop spaces." A booklet issued to all servicemen housed on the base carried an introductory message from Captain James E. Webb, commanding officer of the Naval Air Station. Captain Webb stated: "This brochure provides ... the necessary regulations and rules for your assistance and guidance throughout your stay in government quarters." Within this booklet a section was entitled, "Fire, Safety and Police Regulations" and contained directions on the storage of gasoline but nothing specifically on the use of gasoline to prime carburetors.

Other regulations issued on January 5, 1979 and in effect at the time of the incident were explicitly directed to fire prevention. These regulations provided that "the prevention of fire in administrative and quarters area is a moral and legal responsibility of all personnel, requiring alertness, strict adherence to fire regulations, and intelligent application of fire prevention safeguards. Fire hazards are not acceptable within the naval establishment. The goal of fire prevention and protection programs is the *total prevention* of loss of life and property by fire" (emphasis in original). These regulations specified that "Public Quarters Residents" were responsible for "compliance with Fire Regulations" and "application of fire prevention safeguards in Quarters, housing, and facilities." The Fire Regulations that accompanied this regulation stated: *"Fire Hazardous Operations* shall not be conducted prior to establishment of adequate fire prevention measures and approved by the Fire Chief."* (emphasis in original).

A report to the navy on the accident by Ensign David M. Anderson, Jr. stated that "[a]n accepted primer spray should have been used rather than gasoline to prime the carburetor ... [U]sing an open coffee can to pour the gas was a contributing factor in the accident;" and that "using gasoline to prime the carburetor is not a safe practice but is relatively common."

## ANALYSIS

■■■ The Federal Tort Claims Act waives the government's immunity to a suit for personal injuries caused by an "employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). The scope of employment of a military member "means acting in line of duty." 28 U.S.C.

§ 2671. The military "line of duty" is defined by the applicable state law of respondeat superior. *Lutz v. United States,* 685 F.2d 1178, 1182 (9th Cir.1982). Where as here, the facts of the incident are not in dispute, the determination of the scope of employment is a question of law, reviewable de novo. *Id.* In this case California law applies. California defines "scope of employment" very broadly. *Doggett v. United States,* 858 F.2d 555, 559 (9th Cir. 1988). The California test for determining scope of employment "turns on whether '(1) the act performed was either required or "incident to his duties" ..., or (2) the employee's misconduct could be reasonably foreseen by the employer in any event.'" *Id.* (quoting *Jeffrey Scott E. v. Central Baptist Church,* 197 Cal.App.3d 718, 243 Cal.Rptr. 128, 129 (1988)).

The United States invokes *Hartzell v. United States,* 786 F.2d 964 (9th Cir.1986), in which the negligent driving of an Air Force sergeant on vacation but en route to a new assignment was held not to be within the scope of her employment by the Air Force. Under the applicable state law, that of Arizona, this result was mandated. Moreover, as this court observed, it would be inconsistent with the limited waiver of immunity intended by the Federal Tort Claims Act to make the United States liable for "virtually any tort committed by a serviceman." *Id.* at 969. *Hartzell,* however, did not address the extent of military duty to assure security in military housing.

Our case involves the same considerations that governed the court in deciding *Lutz, supra.* In that case we said:

Military housing presents a unique situation. Unlike employees and residents of cities and towns, the employment relationship of residents of military bases continues even during the off-duty at-home hours. We do not suggest that every act of a base resident is within the scope of his employment. Such a rule would impose upon the military a liability far broader than that of a private employer, contrary to the limited waiver intended by the FTCA. However, we agree with the Fifth Circuit that claims involving base residents require close examination of the employee's actions and the employer's interest in them.

*Id.* at 1183 (citations omitted).

In *Lutz* the control of a serviceman's dog was found to be a military duty imposed for the benefit of the Air Force by Air Force regulations on the dog's owner who was in base housing. In our case the duty to adhere to fire regulations and not to engage in fire hazardous operations without the establishment of adequate fire prevention measures was a military duty imposed for the benefit of the Navy by Navy regulations on servicemen in the Point Mugu naval housing. It is difficult to think of an older or more critical military duty imperative than the prevention of fire in camps or quarters. At all times on the housing base Bartole and Cleaves had the duty to act in conformity with the regulations designed to prevent fire. Their liberty status did not relieve them of the continuing duty to comply with the fire regulations governing military personnel who were "Public Quarters Residents." The Navy is therefore responsible for their actions in securing the base against fire hazards.

Bartole and Cleaves in fact violated the regulations and did so by employing a reckless method of priming the engine. Their negligence endangered all within a short radius of their activity. Christa Washington was within that range and was injured as a proximate result of their negligent acts. Accordingly we reverse the judgment in favor of the United States and remand for the limited purpose of determining her damages.

REVERSED AND REMANDED.