Suzanne HALLETT, a California
Citizen, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Lisa C. REAGAN, a California
Citizen, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Marie Colleen WESTON, a California
Citizen, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Judy MAS, a California Citizen, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Rhonda RAMA and Darren Rama,
California Citizens, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Nos. CV–S–93–802–PMP to CV–S–93–804–
PMP, CV–S–93–853–PMP (RLH) and
CV–S–93–854–PMP (RLH).

United States District Court,
D. Nevada.

Feb. 21, 1995.

Marie Louise Hagen, Torts Branch Civil Div., U.S. Dept. of Justice, Washington, DC, for defendant.

Shamoon Zakaria, Daniel Birnbaum, Brown, Monzione, Fabbro, Zakaria & Scarlett, San Francisco, CA, Cal J. Potter, Potter Law Offices, Las Vegas, NV, for plaintiffs Suzanne Hallett, Lisa C. Reagan and Marie Colleen Weston.

Melvin M. Belli, Sr., Kevin R. McLean, Law Office of Melvin Belli, San Francisco, CA, Frank Stapleton, Las Vegas, NV, for plaintiff Rhonda Rama, Darren Rama and Judy Mas.

PRO, District Judge.

This action arises from a series of events alleged to have occurred at the annual Tailhook Conventions held at the Las Vegas Hilton Hotel ("the Hilton") in September 1990 and September 1991. The important issue before this Court is not, however, whether the events alleged by Plaintiffs occurred at the Tailhook Convention. Nor is the Court called upon to determine whether Plaintiffs may have viable claims for relief against a variety of potential defendants. The sole issue before this Court is whether the United States may be held liable for the alleged assaults under the Federal Tort Claims Act.

Plaintiff Suzanne Hallett ("Hallett") was a guest at the Hilton in September 1990 when she was allegedly asked by Naval officers to attend social events related to the Convention. The social events revolved around the hospitality suites of the third floor of the Hilton. Hallett claims that upon entering the third floor hallway to attend these social events, she was assaulted by many men, most of whom she claims were Naval officers, who touched and grabbed her as she was forced down the hallway through a so-called "gauntlet."

The remaining Plaintiffs, Lisa C. Reagan ("Reagan"), Marie Colleen Weston ("Weston"), Judy Mas ("Mas"), and Rhonda Rama ("Rama"), each claim that they were assaulted in a similar manner at the 1991 Convention. Plaintiff Rhonda Rama further alleges that sometime after having to endure the

"gauntlet" she was taken to the fourteenth floor of the Hilton where she was raped.

Plaintiffs each filed separate Complaints naming the United States Department of the Navy ("the United States") as Defendant, and asserting four causes of action for sexual assault and battery, negligence, negligent infliction of emotional distress and punitive damages.[1] Plaintiff Darren Rama alleged a Fifth Cause of Action for loss of consortium.

On April 18, 1994, this Court entered an Order (# 31) dismissing Plaintiffs' First, Third, and Fourth causes of action, and further dismissing Plaintiff Darren Rama's Fifth Cause of Action. The only remaining claim is the Second Cause of Action for negligence in which Plaintiffs allege a duty on the part of the United States as the occupant or possessor of the premises where the alleged incidents occurred. *See* Order (# 31).

Presently before the Court is the Defendant United States' Motion to Dismiss or, in the Alternative, for Summary Judgment (# 49), filed November 14, 1994. Plaintiffs Hallett, Reagan, and Weston filed their Opposition to Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment and Request for Oral Hearing (# 50), and filed a Separate Statement of Material Facts Genuinely in Dispute (# 51) pursuant to Local Rule 140–7 on November 28, 1994. The United States filed its Reply to the Separate Statement of Material Facts Genuinely in Dispute of Plaintiffs Hallett, Reagan, and Weston and its Reply Memorandum of Points and Authorities (# 56) on December 12, 1994.

Plaintiffs Judy Mas and Rhonda Rama filed their Opposition to Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment, and Request for Oral Hearing (# 54) on December 5, 1994. The United States filed its Reply (# 57) on December 23, 1994.

This Court held a hearing on this matter on February 17, 1995.

## I. Jurisdiction

### A. Motion to Dismiss

■■■ If an opposing party challenges the sufficiency of the jurisdictional allegations in the complaint, the party who claims that jurisdiction exists must prove the existence of federal jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Thornhill Publishing Co. v. General Tel. and Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979); *see Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). When resolution of the jurisdictional issue is separable from resolution of factual disputes as to the merits of the case, the Court "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill Publishing Co.*, 594 F.2d at 733. In considering a motion to dismiss based on lack of jurisdiction, this Court may review affidavits and other evidence to resolve factual disputes on the issue of jurisdiction without converting the motion into one for summary judgment. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *see Capitol Industries–EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 n. 29 (9th Cir.1982), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982); *Thornhill Publishing Co.*, 594 F.2d at 733.

The dispute over jurisdictional facts in this case concerns whether the alleged acts by those members of the military attending the 1990 and 1991 Tailhook Conventions were within the scope of their employment. The dispute on the merits in this case concerns whether the United States owed a duty to Plaintiffs arising out of the alleged control of the third floor of the Las Vegas Hilton during the Tailhook Convention. The Court finds that the resolution of the jurisdictional issue is separable from the resolution of the merits. The Court must therefore resolve

---

1. Each Plaintiff filed separately against the United States in this matter, except for the Ramas who filed their Complaint jointly. As a result, there are five separate case files representing each case against the United States. On March 18, 1994, the Court consolidated the five cases for the purposes of pretrial discovery and pretrial motions and designated *Hallett v. United States Department of Navy*, 850 F.Supp. 874 (D.Nev. 1994), as the base file.

the jurisdictional issue before allowing the case to proceed on the merits.

### B. Scope of Employment

■ The Federal Tort Claims Act ("FTCA") waives the Government's immunity to a plaintiff's suit for personal injuries caused by an employee of the Government. *Washington v. United States,* 868 F.2d 332, 333 (9th Cir.1989), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 536 (1989). To invoke jurisdiction under the Federal Tort Claims Act ("FTCA"), a plaintiff must show that her injury was caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (1994). *See Sheridan v. United States,* 487 U.S. 392, 398, 108 S.Ct. 2449, 2453–54, 101 L.Ed.2d 352 (1988); *Washington,* 868 F.2d at 333.

■ The determination of "scope of employment" under the FTCA does no more than invoke state principles of respondeat superior. *Lutz v. Secretary of the Air Force,* 944 F.2d 1477, 1488 (9th Cir.1991); *Lutz v. United States,* 685 F.2d 1178, 1182 (9th Cir. 1982); *United States v. McRoberts,* 409 F.2d 195, 197 (9th Cir.1969) (per curiam), *cert. denied,* 396 U.S. 1014, 90 S.Ct. 551, 24 L.Ed.2d 505 (1970); *see Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). The law of the state where the act or omission occurred governs the inquiry into "scope of employment." *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Dornan v. United States,* 460 F.2d 425, 427 (9th Cir. 1972); *see Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962) (liability for an employee's act of negligence is determined by the law of the state where the act occurred); *Miller v. United States,* 945 F.2d 1464, 1466 (9th Cir.1991) (actions against the United States under the FTCA are governed by the substantive law of the state where the allegedly tortious act or omission occurred).

Military personnel act within the scope of their employment if they act "in line of duty." 28 U.S.C. § 2671 (1994). "Line of duty" is defined also by the applicable state law of respondeat superior. *Washington,* 868 F.2d at 333.

■ Under Nevada law, whether an employee was acting within the scope of their employment for purposes of respondeat superior liability is generally a question for the trier of fact. *National Convenience Stores, Inc. v. Fantauzzi,* 94 Nev. 655, 584 P.2d 689, 692 (1978). However, when undisputed evidence exists concerning the employee's status at the time of the tortious act or omission, the Court may resolve the issue as a matter of law. *Evans v. Southwest Gas,* 108 Nev. 1002, 842 P.2d 719, 721 (1992). *See Molino v. Asher,* 96 Nev. 814, 618 P.2d 878, 880 (1980) (record devoid of evidence showing tortious conduct was within the course of employment); *Connell v. Carl's Air Conditioning,* 97 Nev. 436, 634 P.2d 673, 675 (1981) (24–hour on-call employee driving vehicle owned by him but paid for by employer was not acting within scope of employment at time of accident since lack of evidence indicated there were no emergencies employee was responding to).

In Nevada, § 235 of the Restatement of Agency defines "scope of employment." *J.C. Penney Co. v. Gravelle,* 62 Nev. 434, 155 P.2d 477, 482 (1945) (assault by store clerk on individual who interfered with clerk's pursuit of a shoplifter not within scope of clerk's employment since it became a personal matter arising not out of the employer's business nor in the furtherance of its interests). Under this section, "[a]n act of a servant is not within the scope of employment if it is done with no intention to perform it as part of or incident to services on account of which he is employed." *See* Restatement (Second) Agency, § 235 (1958). Accordingly, "if the employee's tort is truly an independent venture of his own and not committed in the course of the very task assigned to him, the employer is not liable." *Prell Hotel Corp. v. Antonacci,* 86 Nev. 390, 469 P.2d 399, 400 (1970). *See also Chapman v. City of Reno,* 85 Nev. 365, 455 P.2d 618, 620 (1969) (slander and malicious interference with a business relationship were outside the course and scope of police officer's employment for city and claims were properly dismissed since

even if conduct taken while on duty it was not for employer's purpose).

Plaintiffs first assert that the fact that the individuals who rented, occupied and invited other persons to the hospitality suites were on duty mandates a finding that those individuals were acting within the scope of their employment.[2] Each United States military officer that has testified to date has stated that they were on duty during all Tailhook Symposiums, and that they received pay for their time spent at Tailhook Conventions. They have also testified that they were never required to take annual leave in order to attend a Tailhook Convention.[3]

 It is undisputed that even when on leave, an active duty officer of the United States military remains subject to military orders and discipline. *See Homlitas v. United States,* 202 F.Supp. 520 (D.Or.1962); *See generally* The Uniform Code of Military Justice, 10 U.S.C. § 801 et seq.; *United States v. Brace,* 11 M.J. 794 (AFCMR 1981). However, the scope of employment of military personnel is determined by the same rules as determine the scope of employment of its civilian employees. *See Williams,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, *vacating Williams v. United States,* 215 F.2d 800 (9th Cir.1954); *Washington,* 868 F.2d at 333–34. A military servicemember may be on active duty, not on leave, and still not acting within the scope of employment. *See, e.g., Bates v. United States,* 517 F.Supp. 1350, 1357 (W.D.Mo.1981), *aff'd,* 701 F.2d 737 (8th Cir. 1983) (though in uniform and on duty, military policeman not acting within the scope of federal employment per Missouri respondeat

superior law when he committed assault, rape, and murder).

 Indeed, in Nevada, on-call status is not determinative as to scope of employment. *See Connell v. Carl's Air Conditioning,* 97 Nev. 436, 634 P.2d 673, 675 (1981) (24–hour on-call employee, who sometimes had to respond to job site in emergency, held not acting within the scope of his employment when his car, on which the employer made the purchase payments and maintenance expenses, collided with another car). *Cf. Evans v. Southwest Gas,* 108 Nev. 1002, 842 P.2d 719 (1992) (on-call employee whose activities were restricted and who was required to take company vehicle and remain in radio distance in order to respond to emergency calls within reasonable period of time held acting within scope of employment at time of accident). As a result, while technically correct that they were "on duty", merely being on duty does not bring every act of a United States military officer within the scope of employment. *See Connell,* 634 P.2d at 675; *Bates,* 517 F.Supp. 1350. Furthermore, the activities at the Hilton Hotel during the Tailhook Conventions at which the assaults on Plaintiffs allegedly occurred were not official functions of either the United States or Navy. *See* Ludwig Deposition, p. 130–31; *See* Redgate Deposition, p. 102. The Court therefore finds that merely being on duty is not conclusive as to whether those members of the military were acting within the scope of employment at the time alleged.

 Plaintiffs assert that Lt. David James Redgate's deposition testimony that

---

**2.** Plaintiffs also contend that the February 1993 report of the Department of Defense ("DOD report") supports these and other contentions. However, under Rule 56(e), this Court may only consider those facts which would be admissible in evidence in considering a motion for summary judgment. *In re Sunset Bay Associates,* 944 F.2d 1503, 1514 (9th Cir.1991). The DOD report undoubtedly served a useful function within the Department of Defense to enable the United States Navy to address many important issues related to the involvement and actions of military personnel at the Tailhook Conventions in question. The Court finds, however, that the DOD report is largely conclusory, contains inadmissible hearsay and double hearsay, does not come within the hearsay exception as stated in Fed.

R.Evid. 803(8)(C), and does not otherwise indicate trustworthiness. *See Coughlin v. The Tailhook Association,* et al., CV–S–93–044–PMP (RJJ), Order dated September 2, 1994. The Court therefore finds that the DOD report would not be admissible at trial. *See* Fed.R.Evid. 802. As a result, the Court will not consider the DOD report in the determination of the instant motion.

**3.** *See* Deposition of Daniel James Redgate ("Redgate Deposition"), p. 44; Deposition of Frederick George Ludwig, Jr. ("Ludwig Deposition"), p. 27–29; Deposition of Richard Francis Braden ("Braden Deposition"), p. 15–16; Deposition of Terry Magee ("Magee Deposition"), p. 33; Deposition of John Craig Clark ("Clark Deposition"), p. 15.

he was transported by a Navy C–9 to a previous Tailhook Convention indicates that the officers attending Tailhook were acting in the line of duty. Even if it is true that attendees were acting within the scope of employment when attending official symposium functions such as lectures and demonstrations, this fact alone has no bearing on whether those officers were acting in line of duty during unofficial, after-hours socializing at the 1990 and 1991 Tailhook Conventions.

■ Plaintiffs also assert that Captain Frederick Ludwig's letter,[4] as President of the Tailhook Association, establishes that those officers who attended Tailhook Conventions were acting in the scope of employment. However, this request by the President of Tailhook Association to control raucous behavior was not an official military order. *See* Clark Deposition, p. 32; Redgate Deposition, p. 74, 96. Furthermore, the Tailhook Association, Inc., is a private, non-profit corporation organized and existing under the laws of California. *See* Ludwig Deposition, p. 13. The Court finds that the Ludwig letter does not establish that those officers attending the social events were acting in the scope of employment.[5]

■ Plaintiffs also assert that because the United States Navy subsequently investigated members who attended the Tailhook Convention those attendees must have acted in the line of duty. The mere fact, however, that the United States Navy concluded it was appropriate to conduct an investigation regarding the alleged conduct of military personnel attending the Tailhook Conventions does not automatically subject the United States to liability under the FTCA. Indeed, there is no indication from any of the evidence submitted that internal Navy or Department of Defense investigations occur only when conduct is within the scope of employment. Speculation will not meet the jurisdictional requirements of this Court. *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785.

Plaintiffs finally assert that Lt. Redgate's testimony that he believed he could accept gifts from the Tailhook Association when he could not otherwise accept gifts from private entities, indicates that any activities undertaken on behalf of the Tailhook Association were undertaken on behalf of the Navy. However, had Lt. Redgate been acting on behalf of the United States, his travel expenses would have been paid by the United States. *See* 5 U.S.C. § 5702 (1994). The Court finds no merit to Plaintiff's assertion.

4. Captain Frederick G. Ludwig, Jr., as President of the Tailhook Association, wrote a letter on Tailhook stationery to each "Skipper" renting a hospitality suite at the Tailhook 1991 Convention which requested (1) the appointment of a "suite duty officer"; and (2) that those duty officers were to be aware of problems encountered in years past with "under age attendees and gang mentality." *See* Letter of Captain Ludwig, attached as Exhibit G to Declaration of Daniel Birnbaum (# 52). Capt. Ludwig also held a meeting with the squadron/suite duty officers on the Wednesday evening prior to the start of the 1991 Convention in which he addressed the issues set forth in his August 13, 1991 letter. *See* Redgate Deposition, p. 77–81.

5. Additionally, the United States did not finance either the suite rental or any other costs associated with any of the squadron hospitality suites. *See* Clark Deposition, p. 32; Ludwig Deposition, p. 123. No active duty member of the United States military was required by his or her superiors to contribute to, support, attend, or otherwise participate in the squadron hospitality suites. *See* Ludwig Deposition, p. 123–24. The squadron hospitality suites were not official United States Navy functions. *See* Braden Deposition, p. 73; Magee Deposition, p. 59. The squadron hospitality suites were not official parts of the Tailhook conventions. *See* Braden Deposition, p. 70; *See* Redgate Deposition, p. 101. In fact, the hotel's third floor and pool and patio area and the squadron hospitality suites were open to the public. *See* Braden Deposition, p. 55; Ludwig Deposition, p. 77–8; Magee Deposition, p. 45; Redgate Deposition, p. 101. Furthermore, none of the people drinking and socializing in the pool, patio, and suites area were wearing United States military uniforms because the activities on Saturday night were not official functions of either the Navy or Tailhook. *See* Ludwig Deposition, p. 130–31; Redgate Deposition, p. 102. Those members of the Tailhook Committee who assisted in running the convention acted on behalf of the Tailhook Association, and were not acting on behalf of the United States. *See* Clark Deposition, p. 32. Even committee members who also were active duty servicemembers were not acting pursuant to military orders while performing duties on behalf of the Tailhook Association. *See* Redgate Deposition, p. 74; Clark Deposition, p. 32. These facts support the Court's finding that those officers attending the Tailhook convention were not acting within the scope of employment.

■ The Court finds that the acts alleged to have occurred on the third floor of the Hilton during the Tailhook Conventions in 1990 and 1991, because they were part of non-official, voluntary activities, were not done with an intention to perform as part of or incident to services on account of which the members of the military were employed. *See* Restatement (Second) Agency, § 235. The Court therefore finds that those as yet unidentified members of the United States military who allegedly assaulted Plaintiffs were not acting in the line of duty. *See J.C. Penney,* 155 P.2d at 482–483; *Chapman,* 455 P.2d at 620; *see also Bates,* 517 F.Supp. at 1357. Accordingly, the Court finds that it has no jurisdiction over the negligence claims asserted by Plaintiffs under the Federal Tort Claims Act.

## II. Duty

Moreover, even were this Court to find that the alleged assailants were acting within the scope of employment by the United States military, Plaintiff has not shown sufficient facts to indicate that the United States had a duty with regard to the third floor of the Las Vegas Hilton where the assaults allegedly occurred in 1990 and 1991.

### A. Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v.*

*CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

### B. Nevada Standards for Occupiers of Land

■ Under Nevada law, an occupier or possessor of land has a duty to act "as a reasonable man in view of the probability of injury to others."[6] *Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935, 943 (1994). As this Court has already stated, the Restatement defines a possessor as "a person who is in occupation of land with intent to control it." Restatement (Second) of Torts, § 328E. *See* Order (# 31).

Plaintiffs assert that the United States undertook a duty when the Tailhook Association coordinated security with the Hilton Hotel for the 1990 and 1991 Tailhook Conventions. *See* Letter of Capt. Frederick J. Ludwig, Jr., attached as Exhibit G to Declaration of Daniel Birnbaum (# 52). *See also* Magee Deposition, p. 63 (testimony that Hilton was

concerned that an elderly couple rented a hospitality suite on the third floor). Implicit to this argument is the assertion that Tailhook is a federal agency.

The FTCA "creates liability for injuries caused by the negligent or wrongful act or omission of an employee of any federal agency acting within the scope of his office or employment." *Lewis v. United States*, 680 F.2d 1239, 1240 (9th Cir.1982) (internal quotation omitted). The FTCA defines "federal agency" as including

> the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

28 U.S.C. § 2671 (1994).

■ To determine whether a corporation is a federal agency for purposes of the FTCA, the Court must consider the following factors:

> (1) the federal government's ownership interest in the entity; (2) federal government control over the entity's activities; (3) the entity's structure; (4) government involvement in the entity's finances; and (5) the entity's function or mission.[7]

*Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132, 1136 (7th Cir.1992). *See Lewis*, 680 F.2d at 1240.

■ It is undisputed that the Tailhook Association is a nonprofit organization, and nothing in the record suggests that the federal government owned an interest in the Tailhook Association. Further, there is no indication of federal government control over

---

**6.** The *Moody* court abolished the determination of duty based on the common law classification of entrants as invitees, licensees, and trespassers. While the status of the entrant may have some bearing on whether an owner, occupier, or possessor of land acted reasonably, that status alone is no longer determinative. *Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935, 942 (1994), citing *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568 (1968).

**7.** The Ninth Circuit explains:
> There are no sharp criteria for determining whether an entity is a federal agency within

> the meaning of the Act, but the critical factor is the existence of federal government control over the "detailed physical performance" and "day to day operation" of that entity. Other factors courts have considered include whether the entity is an independent corporation, whether the government is involved in the entity's finances, and whether the mission of the entity furthers the policy of the United States. *Lewis*, 680 F.2d at 1240 (finding that Federal Reserve Banks are not federal instrumentalities for purposes of the FTCA, but are independent, privately owned and locally controlled corporations) (internal citations omitted).

the activities of the Tailhook Association. In fact, the executive director of the Tailhook Association is a civilian. *See* Ludwig Deposition, p. 121, 125.

The management and membership structure indicates that the Tailhook Association is not a federal agency. More than half of the officers and board of directors were civilians, and the corporation kept regular meetings of the Board of Directors and operated pursuant to corporate bylaws. *See* Ludwig Deposition, p. 23–4; Magee Deposition, p. 16–18. Further, private aviation industry corporations members and civilian individuals comprised Tailhook Association membership. *See* Ludwig Deposition, p. 36, 133; Redgate Deposition, p. 12.

The Tailhook Association's activities were funded through membership dues, the sale of its magazines, and the rental of display areas to military contractors during the annual Tailhook Convention. *See* Ludwig Deposition, p. 134–35, Redgate Deposition, p. 110. There is no evidence that the Tailhook Association receives federal appropriations.

Finally, Tailhook is a professional association with a stated purpose of fostering carrier aviation through scholarship, periodicals, and interaction between active duty and retired servicemembers, civilians, and industry. *See* Ludwig Deposition, p. 14, 133; Redgate Deposition, p. 110. The Court finds that the United States did not have control over the "detailed physical performance" and "day to day operation" of the Tailhook Association. *See Lewis,* 680 F.2d at 1240 (Federal Reserve Banks are not federal instrumentalities for purposes of the FTCA but are independent, privately owned and locally controlled corporations). In light of the factors enunciated in *Mendrala,* the Court finds that the Tailhook Association is not a federal agency. *See Mendrala,* 955 F.2d at 1139 (privately owned organization structured to function independently of the federal government and receiving no appropriations from Congress is not a federal agency for purposes of FTCA).

The Court further finds that any evidence tending to show that the Tailhook Association undertook a duty does not raise a genuine issue of material fact as to whether the United States undertook a duty to the control of the third floor of the Las Vegas Hilton during the 1990 and 1991 Tailhook Conventions.

It is undisputed that the Las Vegas Hilton Hotel was responsible for security of its property, and had security officers present on the third floor. *See* Ludwig Deposition, p. 71, 73, 85, 109, 112; Braden Deposition, p. 66; Redgate Deposition, p. 102. The United States had neither the right nor the power to restrict access to the third floor of the Las Vegas Hilton during the 1990 and 1991 Tailhook Conventions and had no duty to do so.

IT IS THEREFORE ORDERED THAT Defendant United States' Motion to Dismiss or, in the Alternative, for Summary Judgment (# 49) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall forthwith enter Judgment in favor of Defendant United States and against Plaintiffs in each of these consolidated actions.