524 P.2d 951

**The STATE of Arizona, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA; and the Honorable Howard V. Peterson, Respondents;**

and

**Patricia Ann ROUSSEAU, Individually and as guardian of the persons and Estates of her minor children, Velvet Darlene Rousseau and Crystal Elaine Rousseau; Cecil William Rousseau and Roberta Elaine Rousseau, husband and wife; Barbara A. Schraft, as guardian of the persons and Estates of her minor children, Robert John Schraft and Kelly Jerome Schraft; and Robert E. Schraft and Aretta M. Schraft, husband and wife, Real Parties In Interest.**

**No. 11561.**

Supreme Court of Arizona,
In Banc.

July 17, 1974.

Rehearing and Modification Denied
Sept. 17, 1974.

Gary K. Nelson, Former Atty. Gen., N. Warner Lee, Atty. Gen., by William R. Jones, Jr., and Robert J. Bruno, Sp. Asst. Attys. Gen., Phoenix, for petitioner.

Healy & Beal by Robert L. Beal, Tuscon, for respondents real parties in interest.

HOLOHAN, Justice.

The State of Arizona sought by a petition for special action to vacate an order of the superior court granting partial summary judgment against the State in a pending negligence action.

The only issue involved is whether or not the State of Arizona can be held liable

under the doctrine of respondeat superior for the negligent acts of an Arizona National Guardsman who is traveling to a weekend training session.

Virgil Troy Derrick, of San Manuel, joined the Arizona National Guard in 1970 and attended monthly weekend drills in Tucson. For a six-months period between February and July, 1973, in lieu of the once-a-month Tucson drill, Derrick was to attend training sessions in Phoenix at the noncommissioned officer school of the Arizona National Guard Military Academy.

Derrick drove his own vehicle to Phoenix. Since San Manuel is more than fifty miles from the Academy in Phoenix, he was reimbursed for round-trip travel expenses at the rate of ten cents per mile.

Derrick, who otherwise worked six days a week for the Magma Copper Company in San Manuel, was ordered to report to the Academy at 6:30 a. m. on May 5, 1973 for his two-day, monthly training session. He left his home in San Manuel at approximately 4:30 a. m. the morning of the drill and was involved in a two-vehicle accident at about 5:20 a. m. Derrick was killed as were the occupants of the other vehicle, Durwood Raymond Rousseau and Robert Monroe Schraft.

Surviving family members of Rousseau and Schraft brought suit, naming the State of Arizona as one of the defendants. The superior court granted the survivors' motion for partial summary judgment holding the State liable under the theory of respondeat superior if Respondents proved negligence by Derrick. This petition for special action followed.

Petitioner and Respondents are in basic agreement that the relationship between Derrick and the State of Arizona was within the legal framework of a master and servant or employer and employee when Derrick was on duty with the National Guard. The point of contention is whether he was on duty while he traveled to the Academy which in essence calls for a determination of whether he was an employee of the State acting within the scope of his employment. The Petitioner contends that the uncontroverted facts establish that Derrick was not an employee or agent of the State at the time of the accident, and even if agency be established, that he was not acting within the scope of his employment.

The law is well established in this state that certain facts must appear before an employer can be held liable on the theory of respondeat superior for the negligent acts of his employee occurring in the operation of a motor vehicle. The facts must establish that there is a relationship of employer and employee and that the tortious act of the employee must have occurred during the course and scope of his employment. Hansen v. Oakley, 76 Ariz. 307, 263 P.2d 807 (1953). It is equally well settled that an employer is not liable for the tortious acts of his employee while the employee is going to or returning from his place of employment—the so-called "going and coming rule." Pauley v. Industrial Commission, 109 Ariz. 298, 508 P.2d 1160 (1973); Burns v. Wheeler, 103 Ariz. 525, 446 P.2d 925 (1968); Butler v. Industrial Commission, 50 Ariz. 516, 73 P. 2d 703 (1937); 57 C.J.S. Master and Servant § 570d(4); 52 A.L.R.2d 287, 303.

Respondents argue that there is an exception to the general rule when the employer has the right to control the employee in his travel. A basic test to determine if the doctrine of respondeat superior applies to hold an employer liable for the negligence of his employee is whether "he is subject to the employer's control or right to control" the physical conduct of the employee and the performance of his service. Throop v. F. E. Young and Company, 94 Ariz. 146, 382 P.2d 560 (1963); Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35 (1937). We do not believe that the circumstances of this case brought Derrick under the umbrella of the State's control as to his driving to Phoenix for military training.

Both common law and Workmen's Compensation principles · applying the "going

and coming" rule negate any argument that Derrick was subject to the control of the employer or was acting within the scope of or incidental to his employment with the Arizona National Guard while traveling to the National Guard school.

Furthermore, any such employment status only exists

" . . . during the time when the servant is performing or should perform the work which he is employed to do. *It does not begin at the time when it is necessary for him to act in order to perform the required service.* It terminates only when the master no longer has a right to control it." Anderson v. Gobea, 18 Ariz.App. 277, 280, 501 P.2d 453, 456 (1972) (emphasis added).

Going to work is certainly preparatory to working. But, such travel is not within the scope of the employment unless the employee is rendering a service growing out of or incidental to the employment. Driving his car to Phoenix was not part of Derrick's training. He was not required to run any errands for the Academy before his 6:30 a. m. arrival. While the Arizona National Guard granted travel reimbursements, we can find no authority that would give the Guard a legal right to control Derrick before the time that he was ordered to report for duty, such as during his travel from San Manuel to Phoenix or travel back home, again. Nor do the Adjutant General or Commandant of the Academy assert such right of control, as evidenced by their depositions in this case.

The Guard had no right to dictate the manner of travel, the route to be taken, his speed, or that he use his car to go and come from school as compared to other modes of travel. The Guard had no claim to or a remote interest in Derrick until he actually reported to the Academy at 6:30 a. m., May 5, 1973.

Derrick would have been free to travel to Phoenix a week or a day in advance on business or pleasure. He was free to arrange alternative transportation, even if it was inconvenient. He was free to take a direct route or circuitous route to Phoenix.

Derrick could receive a travel allowance from the State for travel by private automobile, and, while Respondents contend that this mileage reimbursement is a crucial factor in establishing that Derrick was under the control of the State, it is not invested with any great significance on this point. The payment of a travel allowance, without more, did not subject Derrick to the control of the Guard while he was traveling.

" . . . [T]he mere fact that the State had agreed to pay [his] travel expenses, in the form of a mileage allowance, did not bestow in it any right of control. To hold that by simply paying his travel expenses . . . the State opened itself to liability for any tortious act he might commit while traveling . . . would be patently unfair and beyond the scope of the doctrine of *respondeat superior.*" Lundberg v. State, 25 N.Y.2d 467, 472, 306 N.Y.S.2d 947, 951, 255 N.E.2d 177, 179 (1969).

In short, the travel itself, in these particular circumstances, was not intrinsically involved with the scope of the employment service, nor involved with collateral duties owing to the Arizona National Guard before the 6:30 a. m. arrival.

Respondents argue that Derrick was on "full time training duty" throughout the six-months period of attendance at the monthly school meetings in Phoenix and would have returned to "inactive duty training" status upon resuming monthly drills with his Tucson unit; therefore it is argued that Derrick was subject to control throughout the period of six months.

If Derrick was in a full time duty status the Respondents have cited several cases in which full time military personnel on active duty moving from one duty station to another were held to be employees within the scope of employment in actions brought under the Federal Tort Claims Act. *See*

Cooner v. United States, 276 F.2d 220 (4th Cir. 1960); Hinson v. United States, 257 F.2d 178 (5th Cir. 1958); Myers v. United States, 219 F.Supp. 71 (1963).

■ The record does not support the contention of Respondents that Derrick was on active status throughout the six-month period. To the contrary, the special orders issued to Derrick provided that he report for full time training duty for the period indicated in the orders. In each instance the period prescribed was two days, and the specific date and time for reporting were set forth in the orders; further the orders provided that upon completion of the training duty indicated the cadet would be relieved from such duty.

Derrick's once-a-month sessions at the Arizona Academy certainly did not give him "full time" status in the Arizona National Guard for six months while at the same time he worked six days a week for Magma Copper Company. Since Derrick was not on a full time duty status the cases decided under the Federal Tort Claims Act have no relevance to this action. The facts in this case are similar to those in Hunt v. State, Adjutant General's Depart-

ment, 201 N.C. 707, 161 S.E. 203 (1931). *See also* Wilson v. United States, 315 F. Supp. 1197 (E.D.Pa.1970).

■ Respondents argue that Derrick was under the control of the State because A.R.S. § 26–151(B) provides that the Uniform Code of Military Justice applies to the National Guard. Derrick may have been subject to discipline under the UCMJ while involved in his training at the Academy, but he was not subject to the military code while he was not actually involved in training. Thus the point raised by Respondents that Derrick was subject to control by the State rests on the point of *when* he was on duty status, and it is clear that this occurred when Derrick reported for duty at the assigned date and time and not before or after.

The decision of the trial court granting Respondents' motion for partial summary judgment is vacated. The matter is remanded to the trial court for further proceedings consistent with this opinion.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.