SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| AARON ENGLER, an unmarried man, | ) | Arizona Supreme Court |
| | ) | No. CV-11-0273-PR |
| Plaintiff/Appellant, | ) | |
| | ) | Court of Appeals |
| | ) | Division One |
| v. | ) | No. 1 CA-CV 10-0561 |
| | ) | |
| | ) | Yuma County |
| GULF INTERSTATE ENGINEERING, | ) | Superior Court |
| INC., a corporation, | ) | No. CV200900353 |
| | ) | |
| Defendant/Appellee. | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Yuma County
The Honorable Mark W. Reeves, Judge

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
227 Ariz. 486, 258 P.3d 304 (2011)

**AFFIRMED**
_____

DON B. ENGLER, P.C.                                           Yuma
     By   Donald B. Engler

And

ABOUD & ABOUD, P.C.                                         Tucson
     By   Michael J. Aboud
Attorneys for Aaron Engler

HOLLOWAY ODEGARD & KELLY, P.C.                             Phoenix
     By   Peter C. Kelly, II
          Charles M. Callahan
          Michelle N. Ogborne
Attorneys for Gulf Interstate Engineering, Inc.
_____

**B E R C H**, Chief Justice

¶1       In this case, we address whether an employer can be held vicariously liable for an after-work accident caused by an employee who was on an extended away-from-home assignment.  We hold that because the employee was not subject to his employer's control, he was not acting within the scope of his employment at the time of the accident and the employer is therefore not liable for his actions.

## I.  FACTS AND PROCEDURAL BACKGROUND

¶2       Ian Gray worked for Gulf Interstate Engineering, Inc. ("Gulf"), a Texas-based energy consulting company.  In 2007, Gray worked on the design and construction of a natural gas compressor for Gulf in Los Algodones, Mexico.  Gray lived in Houston and flew each week from Houston to San Diego, where he rented a car and drove to Yuma.  He stayed in a hotel in Yuma and commuted each day to the worksite in Mexico.

¶3       Gulf reimbursed Gray's business expenses, including the cost of his lodging, rental cars, and meals.  In addition, Gulf paid Gray for his travel to and from the job site because his work required him to cross an international border each day, which often entailed significant delays, especially when returning to Yuma.  Gulf considered Gray's work day to begin when he left the hotel in Yuma and to conclude when he returned

- 2 -

there. During after-work hours, Gulf did not attempt to supervise Gray or control his activities.

¶4 On December 11, 2007, after a day of work in Mexico, Gray returned to his hotel at approximately 7:30 p.m. Shortly thereafter, Gray and a co-worker left the hotel in Gray's rental car to go to a restaurant. On the way back to the hotel after dinner, Gray made an improper left turn and hit a motorcycle driven by Aaron Engler, who sustained serious injuries.

¶5 Engler sued Gray and Gulf for his injuries, alleging Gray's negligence and Gulf's vicarious liability. Gulf moved for summary judgment, arguing that it could not be held vicariously liable because Gray was not acting in the course and scope of his employment when the accident occurred. Engler filed a cross-motion, urging the court to find that all of Gray's activities while in Yuma were undertaken "solely to serve the business purposes of Gulf Interstate until he returned" to Houston. The trial court granted Gulf's motion. Thirteen days later, however, the court of appeals issued its opinion in *McCloud v. Kimbro* (*McCloud II*), 224 Ariz. 121, 125 ¶ 17, 228 P.3d 113, 117 (App. 2010), which held "that an employee on out-of-town travel status is within the course and scope of his employment and subjects his employer to vicarious liability while traveling to and from a restaurant for a regular meal."

Engler filed a motion for a new trial, but the trial court distinguished *McCloud II* and denied the motion.

¶6     Engler appealed. The court of appeals affirmed, holding that an employee on out-of-town travel status is not acting within the course and scope of his employment while traveling to or from a restaurant for a regular meal, a holding inconsistent with the holding in *McCloud II*. *See Engler v. Gulf Interstate Eng'g, Inc*., 227 Ariz. 486, 258 P.3d 304 (App. 2011). Engler petitioned this Court for review.

¶7     We granted review to resolve the apparent conflict between *McCloud II* and *Engler*. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.  DISCUSSION

¶8     This case was decided on cross-motions for summary judgment. The parties agree to the material facts, but disagree as to the legal conclusion to be drawn from them. We review de novo the superior court's grant of summary judgment and construe the facts and reasonable inferences in the light most favorable to Engler, the non-prevailing party. *See Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12, 69 P.3d 7, 11 (2003).

¶9     "The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees." *Tarron v. Bowen Mach. & Fabricating*,

- 4 -

*Inc.*, 225 Ariz. 147, 150 ¶ 9, 235 P.3d 1030, 1033 (2010). But an employer is vicariously liable for such acts only if the employee is acting "within the scope of employment" when the accident occurs. *E.g.*, *State v. Super. Ct.* (*Rousseau*), 111 Ariz. 130, 132, 524 P.2d 951, 953 (1974).

¶10    To determine the course and scope of employment, Arizona courts have long considered the extent to which the employee was subject to the employer's control. *See, e.g.*, *Consol. Motors, Inc. v. Ketcham*, 49 Ariz. 295, 305, 66 P.2d 246, 250 (1937); *Rousseau*, 111 Ariz. at 132, 524 P.2d at 953 (noting that the "basic test" in tort actions arising out of vehicular accidents is whether the employee is "subject to the employer's control or right to control" at the time of the accident); *Tarron*, 225 Ariz. at 150 ¶ 12, 235 P.3d at 1033.

¶11    This approach is endorsed by the Restatement of Agency. *E.g.*, *Ketcham*, 49 Ariz. at 306, 66 P.2d at 250 (citing Restatement (First) of Agency § 220 (1933)); *Santiago v. Phx. Newspapers, Inc.*, 164 Ariz. 505, 508-09, 794 P.2d 138, 141-42 (1990) (citing Restatement (Second) of Agency ("Restatement (Second)") § 220 (1958)). Several sections of the Restatement (Second) identify relevant factors for determining whether the employer exercised actual control or retained the right to control the employee's conduct when the negligent act occurred. *See* Restatement (Second) §§ 219(2), 220(2), 228(1), 229(2).

These factors include the previous relations between the employer and the employee and whether the act (a) was the kind the employee was hired to perform, (b) was commonly done by the employee, (c) occurred within the employee's working hours, and (d) furthered the employer's purposes or fell outside the employer's "enterprise." *See Higgins v. Assmann Elec., Inc.*, 217 Ariz. 289, 297 ¶¶ 29-32, 173 P.3d 453, 461 (App. 2007) (citing Restatement (Second) § 229); *Anderson v. Gobea*, 18 Ariz. App. 277, 280, 501 P.2d 453, 456 (1972) (citing Restatement (Second) § 228).

¶**12**      Applying these factors in previous cases to evaluate an employee's away-from-work conduct, we have not found the requisite employer control when the employee maintained the right to choose where, when, and how to travel, and by what route. *See Rousseau*, 111 Ariz. at 132-33, 524 P.2d at 953-54. Nor has reimbursement of travel expenses or "payment of a travel allowance, without more" subjected the employer to liability. *Id.* at 133, 524 P.2d at 954 (citing *Lundberg v. State*, 255 N.E.2d 177, 179 (N.Y. 1969)); *see also Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 284, 640 P.2d 211, 214 (App. 1982) (citing *Lundberg*).

¶**13**      Although this case presents a fact pattern not confronted in our previous cases — negligent driving by an employee on out-of-town travel status — the same analysis

applies: An employee's tortious conduct falls outside the scope of employment when the employee engages in an independent course of action that does not further the employer's purposes and is not within the control or right of control of the employer. *Robarge*, 131 Ariz. at 283-84, 640 P.2d at 213-14. This test also comports with the Restatement (Third) of Agency ("Restatement (Third)") § 7.07, which consolidates the "treatment of topics covered in several separate sections of [the] Restatement Second, Agency, including §§ 219, 220, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, and 267."[1] Restatement (Third) § 7.07 (Reporter's Note (a) (2006)). We agree with the court of appeals that the Restatement (Third) § 7.07 sets forth the appropriate test for evaluating whether an employee is acting within the scope of employment, and we adopt it here. *See Tarron*, 225 Ariz. at 152-53 ¶¶ 24-28, 235 P.3d at

---

[1]     Restatement (Third) of Agency § 7.07 provides as follows:
      (1)  An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
      (2)  An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
      (3)  For purposes of this section,
           (a)  an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and
           (b)  the fact that work is performed gratuitously does not relieve a principal of liability.

1035-36 (following control test from Restatement (Third) § 7.03).

¶14        Applying the Restatement (Third) test, Gulf did not exercise any control over Gray at the time of the accident. Gray was not serving his employer's interests in traveling to and from the restaurant during his off hours, and Gulf did not control where, when, or even if Gray chose to eat dinner.  Once Gray returned to his hotel at the end of the work day, he was free to do as he wished.  That he ate dinner with a work colleague after work hours did not transform the social occasion into a business activity.  *See Pham v. OSP Consultants, Inc.*, 992 P.2d 657, 659 (Colo. App. 1999) (finding employee's patronage of bar with co-worker during after-work hours unrelated to employer's business) (citing *Hynes v. Donaldson*, 395 P.2d 221, 222-23 (Colo. 1964)).  Because the accident occurred while Gray engaged in an independent course of action not intended to serve his employer's work purposes, Gulf is not vicariously liable.

¶15        Rather than focusing on the employer's right to control, Engler urges us to view scope of employment broadly, applying workers' compensation principles.  Workers' compensation is a no-fault system for compensating injured employees that focuses on whether the employee was injured while working or performing a work-related activity.  *Robarge*, 131

- 8 -

Ariz. at 282, 640 P.2d at 213. Workers' compensation laws are liberally construed and applied to benefit the injured employee. *See Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 72 ¶ 23, 117 P.3d 786, 791 (2005). In *McCloud II*, the court of appeals recognized that workers' compensation principles may provide guidance in vicarious liability cases. 224 Ariz. at 123-24 ¶ 10, 228 P.3d at 115-16 (citing *Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456). But we disagree that those standards should apply here. Workers' compensation and tort law differ in purpose and scope. *Robarge*, 131 Ariz. at 282, 640 P.2d at 213. Workers' compensation covers injured employees, whereas "respondeat superior subjects employers to liability for injuries suffered by an indefinite number of third persons." *Id.* (citing *Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 764 (Alaska 1973) (superseded by statute on other grounds)). The concept of "scope of employment," when used in the tort context, is tied to the employer's right to control the employee's activity at the time of the tortious conduct. *Robarge*, 131 Ariz. at 282, 640 P.2d at 213; *see also Throop v. F. E. Young & Co.*, 94 Ariz. 146, 153, 382 P.2d 560, 564 (1963) (noting that workers' compensation cases are not necessarily authority for determining common-law liability under the doctrine of respondeat superior). We therefore decline Engler's invitation to apply workers' compensation principles to this tort inquiry.

¶16        Engler next urges us to hold that all of Gray's activities while in Yuma furthered Gulf's business purposes.  He insists that they were "not merely a large part of Mr. Gray's employment — [they were] his employment."  *Engler*, 227 Ariz. at 489 ¶ 9, 258 P.3d at 307.  We disagree.  Whether the employee was subject to the employer's control must be assessed at the time of the employee's tortious act.  *Carnes v. Phx. Newspapers, Inc.*, 227 Ariz. 32, 35 ¶ 10, 251 P.3d 411, 414 (App. 2011).  At the time of the accident, Gulf exercised no control over Gray.

¶17        Engler similarly maintains that Gulf exercised control over Gray because Gray had to eat during his lengthy away-from-home work assignment.  We agree that Gray had to eat, but disagree that this converts Gray's personal time into work time.  Not every activity of an employee on a work assignment is under the employer's control, even if the employer understands that such activity is necessary or might occur.  *See, e.g.*, *Scottsdale Jaycees v. Super. Ct.* (*Weaver*), 17 Ariz. App. 571, 575, 499 P.2d 185, 189 (1972).

¶18        Engler relies on *State Department of Administration v. Schallock*, 189 Ariz. 250, 941 P.2d 1275 (1997), to support the argument that any conduct incidental to authorized conduct should fall within the scope of employment and render the employer subject to liability.  Although *Schallock* cites the Restatement (Second) factors to determine whether conduct not

expressly authorized falls within the course and scope of employment, it provides little guidance. *Schallock* involved managerial sexual harassment. *Id.* The employee in *Schallock* was able to carry out his harassment in part because he was a supervisor, and the harassment occurred as part of his "supervision" of the plaintiff, *id.* at 261-62, 941 P.2d at 1286-87, a situation far different from the one before us. The Court itself recognized that "special factual and legal considerations" distinguish such cases "from the great majority of cases involving torts committed by a servant against" a third party. *Id.* at 257, 941 P.2d at 1282.

¶19 Finally, Engler encourages us to follow the analysis in *McCloud II*. We decline to do so. As a preliminary matter, we note that *McCloud II* involved an administrative regulation providing that a DPS officer comes "within the course and scope of employment when driving a state-owned vehicle if driving 'to and from meals while on out-of-town travel.'" 224 Ariz. at 125 ¶ 15, 228 P.3d at 117 (quoting Ariz. Admin. Code R2-10-107(A)(2)(d)). That regulation does not apply here. But to the extent that *McCloud II* suggests that employees generally are acting within the course and scope of their employment when "driving to a restaurant" while off duty during an extended out-of-town assignment "because eating is incidental to a multiple-day assignment," *id.* ¶ 17, we disagree.

- 11 -

¶20    In sum, analysis of Gulf's control over Gray at the time of the accident reveals that Gray was on his own time, was not subject to his employer's control, and was not serving his employer's purposes in traveling from the restaurant during his off hours.

### III.  CONCLUSION

¶21    For the reasons set forth above, we affirm the judgment of the superior court and the opinion of the court of appeals.


_____
Rebecca White Berch, Chief Justice


CONCURRING:


_____
Scott Bales, Vice Chief Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice


_____
*


* Before his resignation on June 27, 2012, as a result of his appointment to the United States Court of Appeals for the Ninth Circuit, Justice Andrew D. Hurwitz participated in this case, including oral argument, and concurred in this opinion's reasoning and result.