IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MICHAEL COREY CRAVENS,**
**SURVIVING SPOUSE OF SAMANTHA J. CRAVENS, DECEASED,**
*Plaintiff/Appellee,*

*v.*

**MARTIN A. MONTANO JR., A SINGLE MAN; AND CASAS CUSTOM FLOOR**
**CARE, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,**
*Defendants.*

**CINCINNATI INDEMNITY COMPANY,**
*Plaintiff in Intervention/Appellant,*

*v.*

**MARTIN A. MONTANO JR.,**
*Defendant in Intervention.*

No. CV-24-0143-PR
Filed April 29, 2025

Appeal from the Superior Court in Pima County
No. C20192093
The Honorable Kellie Johnson, Judge
The Honorable D. Douglas Metcalf, Judge
The Honorable Brenden J. Griffin, Judge
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals,
Division Two
No. 2 CA-CV-2023-0108
Filed June 3, 2024
**AFFIRMED IN PART, VACATED IN PART**

COUNSEL:

Patrick J. Lopez, Nathan S. Rothschild, Alexander Winkelman (argued), Mesch Clark Rothschild, Tucson, Attorneys for Michael Corey Cravens

Michael J. Raymond (argued), Raymond Greer, P.C., Scottsdale, Attorneys for Cincinnati Indemnity Company

———————

VICE CHIEF JUSTICE LOPEZ authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and JUDGE MORSE joined.[*]

———————

VICE CHIEF JUSTICE LOPEZ, Opinion of the Court:

¶1        We consider the meaning of the phrase "in connection with your business" as it relates to an employee's use of a "nonowned" "covered auto" as defined in Cincinnati Indemnity Company's ("Cincinnati") automobile insurance policy. We hold that an employee operates a non-owned auto "in connection with your business" when using the vehicle while engaged in the employer's business. To qualify, an employee's use of a vehicle must be directly involved with, or in furtherance of, an employer's business purpose but does not include a routine commute to or from an employer's office.

¶2        We also consider the enforceability of a contingent agreement under *United Services Automobile Ass'n v. Morris*, 154 Ariz. 113 (1987). We hold that a contingent *Morris* agreement is enforceable if it otherwise meets the substantive requirements of such agreements to ensure against fraud, collusion, unfairness, or unreasonableness.

---

[*] Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable James B. Morse Jr., Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

## BACKGROUND

¶3          On April 26, 2018, Martin Montano Jr., an employee of Casas Custom Floor Care, LLC ("Casas"), was scheduled to arrive at the company's main yard at six in the morning, receive the day's assignment, and travel in a work vehicle to the assigned jobsite. That morning, Montano woke up feeling ill and informed his supervisor he would be late and would meet the team at the site. On his way to the site, Montano discovered a nail in his tire and drove to his mother's house to borrow her truck. Montano finally arrived at the jobsite, at around 11 a.m., in his mother's truck.

¶4          After completing the day's remaining work, Montano drove to Casas's main yard to correct his timesheet because, earlier that week, he had preemptively filled out the timesheet to reflect a full day's work. On his way to the yard, Montano ran a red light and collided with Samantha Cravens's vehicle, killing her.

¶5          Michael Cravens ("Cravens"), the surviving spouse, sued Montano and Casas. Cravens alleged that Montano negligently caused the wrongful death of his wife, and that Casas was vicariously liable for Montano's actions. At the time of the accident, Cincinnati insured Casas under an automobile insurance policy (the "Policy"). The Policy extended insurance coverage to Montano if he, in part, was using a "covered auto" "in connection with" Casas's business.

¶6          Cincinnati defended Casas in the lawsuit but issued Montano a reservation of rights letter disputing its obligation to defend or insure him. Cincinnati argued that, under the Policy, it was not required to provide coverage for Montano unless at the time of the accident he was driving "in connection with [Casas's] business," meaning that he was acting in the course and scope of his employment. Cincinnati refused coverage absent a court finding that Montano satisfied this condition.

¶7          After Cincinnati reserved its rights, Montano and Cravens entered into a *Morris* Agreement (the "Agreement"). In the Agreement, the parties stipulated to Montano's liability in the accident, agreed to enter a $3.85 million judgment against Montano in favor of Cravens—only to be collected against the insurance policy proceeds—and assigned Montano's rights under the Policy to Cravens. Before Montano and Cravens filed this stipulated judgment with the court, Cincinnati intervened in the case to file

a complaint against both Montano and Cravens contesting the Agreement. Cravens counterclaimed, pursuant to his assigned rights, arguing that Cincinnati breached its contractual obligation to indemnify Montano by denying coverage.

**¶8**         Cravens moved for summary judgment on the coverage issue. The superior court granted the motion, ruling that Montano was using his mother's truck "in connection with" Casas's business at the time of the accident. Consequently, Cincinnati was obligated to indemnify Montano under the Policy.

**¶9**         Cincinnati moved for summary judgment on the enforceability of the Agreement. The court denied the motion. The court held a two-day reasonableness hearing and determined that the Agreement was enforceable against Cincinnati. The court entered the $3.85 million stipulated judgment in favor of Cravens against Montano and ordered Cincinnati to pay Cravens. The court also awarded Cravens his reasonable attorney fees. Cincinnati appealed the court's rulings concerning coverage and the Agreement.

**¶10**         The court of appeals affirmed the superior court's rulings on coverage and the Agreement. *Cravens v. Montano*, No. 2 CA-CV 2023-0108, 2024 WL 2823307, at *12 ¶ 58 (Ariz. App. June 3, 2024) (mem. decision). We granted review because the meaning of a material term in an auto insurance policy concerning the scope of coverage for an employee's use of a vehicle "in connection with [an employer's] business" is an issue of statewide concern that is likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

**¶11**         We review de novo a grant of summary judgment. *Rosenberg v. Sanders*, 256 Ariz. 359, 364 ¶ 24 (2023). Summary judgment is appropriate if the material facts are not genuinely disputed, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Neptune Swimming Found. v. City of Scottsdale*, 256 Ariz. 551, 559 ¶ 23 (2024). We uphold the superior court's factual findings as to the *Morris* Agreement unless they are "clearly erroneous, but we review any legal conclusions de novo." *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 171 ¶ 107 (App. 2004).

**I.**

¶12        We begin with the coverage issue under the Policy.  We interpret insurance policies de novo.  *Fid. Nat'l Title Ins. Co. v. Osborn III Partners LLC*, 254 Ariz. 440, 443 ¶ 14 (2023).  Because an insurance policy is a contract, "the terms of the policy must govern."  *Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co.*, 250 Ariz. 408, 411 ¶ 11 (2021) (quoting *Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 517 (1967)).  We interpret the terms "in the broader context of the overall contract," *id.*, and accord undefined terms "their plain and ordinary meaning, examining the policy 'from the viewpoint of an individual untrained in law or business,'" *Fid. Nat'l Title Ins. Co.*, 254 Ariz. at 443 ¶ 14 (quoting *Walker v. Auto-Owners Ins. Co.*, 254 Ariz. 17, 20 ¶ 10 (2022)).  "If a policy is subject to 'conflicting reasonable interpretations,' it is ambiguous, and we interpret it by examining, as pertinent here, the 'transaction as a whole.'"  *Walker*, 254 Ariz. at 20 ¶ 10 (quoting *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 ¶ 10 (2018)).

¶13        Cravens and Cincinnati each argue that the scope of the Policy's coverage centers on the phrase "in connection with your business."  The superior court and court of appeals' rulings also turned on this phrase.  *Cravens*, 2024 WL 2823307, at *2–3 ¶¶ 12–14, *6 ¶¶ 28–29.  This analysis, however, is too narrow to determine coverage under the Policy.  To determine the scope of coverage under the Policy, we must reconcile two related and seemingly competing phrases: (1) "in your business," and (2) "in connection with your business."  An accurate interpretation of the Policy requires a reading that harmonizes both phrases.  *See Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 475 ¶ 41 (App. 2010) ("When interpreting an insurance contract, we have a duty to 'harmonize all parts of the contract . . . by a reasonable interpretation in view of the entire instrument.'" (alteration in original) (quoting *Brisco v. Meritplan Ins. Co.*, 132 Ariz. 72, 75 (App. 1982))).

**A.**

¶14        Cincinnati contracted with Casas to provide automobile liability insurance for injuries and damages resulting from the use of a covered auto.  The Policy provided that Cincinnati "will pay all sums an '*insured*' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

(Emphasis added.) Casas purchased an expanded coverage policy that amended this coverage to include its employees as insureds. The first relevant phrase—"in your business"—arises from the Expanded Coverage Plus Endorsement:

> Who is an insured is amended by adding the following: . . . Any of your "employees" while using a *covered* "auto" *in your business* or your personal affairs, provided you do not own, hire or borrow that "auto."

(Emphasis added.) Notably, this coverage expansion is conditional. To trigger coverage, the Policy must cover the vehicle, and it must be used in Casas's business. In other words, an employee is an insured only while using a covered auto and such use is "*in your business.*"

¶15 The second relevant phrase—"in connection with your business"—comes from § 1(A)(9) of the Policy, which defines a "nonowned" covered auto:

> NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are *used in connection with your business*. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or *members of their households* but *only while used in your business* or your personal affairs.

(Emphasis added.) Therefore, a "nonowned" covered auto contains both a type and purpose requirement: the vehicle must be one Casas does not own, lease, hire, rent, or borrow (type) *and* must be used "in connection with" Casas's business (purpose). We note that the second sentence of this provision applies the phrase "in your business" to vehicles owned by employees or members of the employee's household. Although Montano was driving his mother's vehicle at the time of the accident, she apparently was not a member of Montano's household because he drove to *her* house to borrow her truck. Accordingly, because Montano's use of his mother's truck does not qualify under the second sentence of this provision, only the first sentence applies, and we must determine whether Montano drove the car "in connection with [Casas's] business." *But see Bartolomucci v. Fed. Ins.*

*Co.*, 770 S.E.2d 451, 457 (Va. 2015) (interpreting an identical non-owned auto provision yet applying the second sentence).

¶16     Although the "in your business" term in the expanded coverage provision applies in this case, the "in connection with your business" term set forth in the first sentence of the non-owned auto provision also applies because it defines the relevant "covered auto" referenced in the expanded coverage provision. While the phrases are similar, they are not identical, and we therefore must reconcile them. Reading these two applicable requirements together—"in your business" and "in connection with your business"—the expanded coverage provision can be rephrased as follows:

> Who is an insured is amended by adding the following: . . . Any of your "employees" while using a covered "auto" (i.e., a non-owned auto that is "used in connection with your business") in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

In other words, to trigger coverage, the employee must use the vehicle *in connection with your business* and *in your business*.

¶17     This coverage requirement appears discordant because these phrases are not synonymous; "in connection with your business" is a broader term than "in your business." An example illustrates this conflict. A pizza delivery driver, while making a delivery in his own vehicle that he uses to deliver pizzas, notices an oil pressure warning indicator on his dashboard. After he delivers the pizza, but before he returns to the pizza shop to receive instructions for his next delivery, he drives to see a nearby mechanic to check his oil pressure. On his way to the mechanic, he is involved in an auto accident. The mechanic did not order pizza, so the detour was not technically in the pizza business. But the diversion was likely in connection with the pizza business because the oil pressure warning light occurred during a pizza delivery and future deliveries necessitated a functioning vehicle. Under "in your business," insurance coverage for the driver seems dubious. But under "in connection with your business," coverage for the driver is probable. Therefore, the Policy's coverage standard for employees using non-owned autos—which uses both phrases—is incongruous.

**¶18**        However, because the expanded coverage provision—"in your business"—is the operative authority for Cravens's coverage claim against Montano as a Casas employee, we cannot interpret "in connection with your business" in a way that renders the "in your business" condition superfluous. *See Terrell v. Torres*, 248 Ariz. 47, 50 ¶ 14 (2020) ("[W]e attempt to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous."). We must interpret "in connection with your business" in a way that reconciles the two competing phrases.

**¶19**        We asked the parties at oral argument about the interplay between these two provisions and whether one informed the other. Both parties asserted that "in your business" and "in connection with your business" were synonymous and, thus, their respective interpretations of "in connection with your business" controlled.

**B.**

**¶20**        Cincinnati and Cravens stake out irreconcilable interpretations of "in connection with your business." Cincinnati argues that "in connection with your business" means an employee must use a vehicle in the course and scope of employment at the time of the accident. This interpretation requires the employer's right to control the employee's use of the vehicle at the time of the accident to implicate coverage. *See Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 59 ¶ 15 (2012) ("The concept of 'scope of employment,' when used in the tort context, is tied to the employer's right to control the employee's activity at the time of the tortious conduct."). Other jurisdictions interpreting nearly identical non-owned auto provisions affirm this interpretation. *See, e.g., Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901, 903 (Pa. Super. Ct. 1996) (holding that a vehicle is a non-owned covered auto when the employee uses it "in the course of his employment").

**¶21**        Cravens contends that the court of appeals correctly interpreted "in connection with your business" to mean "an association, link, or relationship" between the vehicle's use and the business at the time of the accident. *See Cravens*, 2024 WL 2823307, at *2–3 ¶¶ 12–14, *6 ¶ 28 (citing *Cal. Cas. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 208 Ariz. 416 (App. 2004)). The court concluded that its definition of the phrase required coverage for Montano's use of his mother's vehicle even if its relationship with Casas's

business "fell short of the showing necessary to establish Casas's liability under respondeat superior." *Id.* at \*6 ¶ 28. Other jurisdictions interpreting nearly identical provisions also adopt this interpretation. *See, e.g.*, *RPM Freight Sys., LLC v. Wesco Ins. Co.*, 656 F. Supp. 3d 721, 730–31 (E.D. Mich. 2023) (holding that the phrase "in connection with" means "related to").

**¶22** We conclude that both parties' interpretations of the phrase "in connection with your business" are reasonable given the Policy's inconsistent use of both broad and narrow language to describe the requisite vehicle-business relationship. Therefore, the phrase is ambiguous. *See Teufel*, 244 Ariz. at 386 ¶¶ 15–17. Other jurisdictions' differing interpretations of a nearly identical insurance provision bolster this conclusion. *See Thompson v. Gov't Emps. Ins. Co.*, 122 Ariz. 18, 21 (App. 1979) ("[W]here various jurisdictions reach different conclusions as to the coverage under a similar insurance policy, such fact is a strong indication that the policy provisions are ambiguous."). However, we reject both parties' interpretations.

### 1.

**¶23** We do not interpret "in connection with your business" to mean course and scope of employment. In separate Policy provisions, Cincinnati uses scope of employment language to exclude coverage. Section 2(B)(5) of the Policy excludes: "'Bodily injury' to any fellow 'employee' of the 'insured' *arising out of and in the course of the fellow 'employee's' employment* or while performing duties related to the conduct of your business." (Emphasis added.) Additionally, § 2(B)(4)(b) excludes bodily injury to "an 'employee' of the 'insured' arising out of the performance of duties related to the conduct of the 'insured's' business." We read each section of an insurance policy "in light of the others so as to give effect to all" of the provisions. *Equity Income Partners, LP v. Chi. Title Ins. Co.*, 241 Ariz. 334, 338 ¶ 11 (2017). In construing "in connection with your business," we assume Cincinnati intended a meaning other than acting within the course and scope of employment because it explicitly used that language in other parts of the Policy. *See Bartolomucci*, 770 S.E.2d at 457 n.3; *cf. Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249–50 ¶ 8 (App. 2006) ("[W]e assume that when the legislature uses different language within a statutory scheme, it does so with the intent of ascribing different meanings and consequences to that language."). Moreover, course and scope of employment requires a level of direct

control that is inconsistent with the indirect relationship "in connection with" entails. *See Engler*, 230 Ariz. at 59 ¶ 15. Therefore, "in connection with your business," as used in the Policy, means something other than course and scope of employment.

**2.**

**¶24** We also decline to interpret "in connection with your business" to mean association, link, or relationship. As noted, an employee operating a non-owned covered auto must use the vehicle *in connection with your business* and *in your business*—both standards are preconditions to expanded coverage. The superior court and court of appeals' conclusion that "in connection with your business" merely requires an association, link, or relationship between an employee's use of a covered vehicle and Casas's business expands the relational threshold for coverage. For example, this expanded scope would likely require insurance coverage for employees while they drive to work, or while they are driving to pick up a work uniform. To be sure, if the Policy did not require the employee to also use the vehicle "in your business," we may have embraced this interpretation as the plain meaning of "in connection with your business." But "in your business," reasonably construed in context, does not carry the same broad implications. *See Bartolomucci*, 770 S.E.2d at 457–58 (noting that "in your business" is narrower than the general scope of "in connection with your business").

**¶25** We may not interpret "in connection with your business" so broadly that it renders the narrower "in your business" threshold meaningless. *See First Credit Union v. Courtney*, 233 Ariz. 105, 110–11 ¶ 23 (App. 2013) ("We construe the contract as a whole and do not render any portion of it meaningless."). To do so would alter the meaning of the Policy to broaden coverage and effectively override the expanded coverage provision, which establishes "in your business" as the operative term for Cravens's coverage claim against Montano as an employee of Casas.

**C.**

**¶26** In sum, we conclude that the phrase "in connection with your business" (1) does not mean course and scope of employment because the Policy uses similar language in other provisions and "in connection with" connotes an indirect relationship to the business that is inconsistent with

the requisite direct control in course and scope; and (2) in context, requires a closer connection to the business than a mere association, link, or relationship. Stated differently, "in connection with your business" as used in the Policy means less than course and scope of employment and more than association, link, or relationship.

¶27 We find two cases from other jurisdictions illuminative in interpreting "in connection with your business." In *Bartolomucci*, the Virginia Supreme Court interpreted a non-owned auto provision identical to the one before us. 770 S.E.2d at 457–58. The court determined that the first sentence of the non-owned auto provision ("in connection with your business") is general while the second sentence ("in your business") is specific, and that the second sentence narrows the first sentence when applicable. *Id.* at 457. The court held that the second sentence governed that case because the claimant was a partner of the law firm, and he owned the vehicle at issue. *Id.* The insurer argued that "in your business" required a scope of employment test, but the court rejected this interpretation. *Id.* at 457 n.3. The court explained that it is bound by what contracts "actually say, not on what may have been intended. As the instruments before us do not include those phrases, the [policy] does not utilize such tests." *Id.* (internal citation omitted).

¶28 In construing "in your business," the *Bartolomucci* court held that the claimant was not using his vehicle in the law firm's business at the time of the accident. *Id.* at 458. The claimant's mere use of his vehicle for "a typical commute from home to work" did not satisfy the "in your business requirement"—the claimant did not use his company Blackberry during the commute, did not bill for any activity, and did not "otherwise perform[] any work during his commute." *Id.* at 457–58. The court explained that "merely thinking about work does not make a commute 'in' the business, as contemplated by the policy language." *Id.* at 458.

¶29 *Bartolomucci* illustrates how "in your business" narrows "in connection with your business" by requiring a correlation between an employee's vehicle use and a business purpose that falls short of scope of employment but exceeds a mere association, link, or relationship. Distilled, an employee's use of a vehicle must constitute or facilitate work to advance a business purpose. *See id.*

**¶30**       *Pham v. Hartford Fire Insurance Co.*, 419 F.3d 286, 290 (4th Cir. 2005), is also instructive.  In *Pham*, the Fourth Circuit interpreted a nearly identical expanded coverage provision.  *Id.*  That provision amended who is an insured to include: "Any employee of yours while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs."  *Id.*  The court concluded that the policy covers an employee "so long as the employee is *engaged in* [the employer's] business or [the employer's] personal affairs."  *Id.* (emphasis added).  Accordingly, the court held that the employee was not engaged in the company's business because he was operating his vehicle outside of work hours and admitted the vehicle use was unrelated to his job.  *Id.*

**¶31**       We hold that the Policy's coverage for an employee's use of a covered auto "in connection with your business" is contingent upon the employee's engagement in an employer's business at the time of the coverage event.  *See Bartolomucci*, 770 S.E.2d at 458; *see also Pham*, 419 F.3d at 290.  An employee's use of a vehicle must be directly involved with or in furtherance of an employer's business purpose but does not include a routine commute to or from an employer's office.  *See Bartolomucci*, 770 S.E.2d at 457–58; *see also State v. Superior Court*, 111 Ariz. 130, 132 (1974) ("It is equally well settled that an employer is not liable for the tortious acts of his employee while the employee is going to or returning from his place of employment—the so-called 'going and coming rule.'").

## II.

**¶32**       We now turn to Cincinnati's argument that the *Morris* Agreement between Montano and Cravens is unenforceable because it is contingent.  The Agreement is contingent because it is subject to rescission if Cravens is unable to pursue his claim of respondeat superior liability against Casas for specified reasons.  We are unpersuaded that the Agreement is unenforceable.  A contingent *Morris* agreement is enforceable if it otherwise meets the well-established requirements of such agreements.

### A.

**¶33**       "The term '*Morris* agreement' is generally used to describe a settlement agreement in which an insured defendant admits to liability and assigns to a plaintiff his or her rights against the liability insurer, including any cause of action for bad faith, in exchange for a promise by the plaintiff

12

not to execute the judgment against the insured." *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 7 ¶ 1 n.1 (2005). *Morris* agreements typically occur when the insurer—as Cincinnati did here—has issued a reservation of rights. *See id.*; *see also Morris*, 154 Ariz. at 119.

¶34 We have cautioned that in an attempt "[t]o relieve himself of personal exposure, the insured may be persuaded to enter into almost any type of arrangement or stipulation by which the claimant hopes to bind the insurer by judgment and findings of fact." *Morris*, 154 Ariz. at 119–20. "To protect the insurer, [this Court] place[s] the burden on the insureds (or their assignees) to show that any *Morris* agreement is free of 'fraud or collusion,' and reasonable in amount." *Safeway Ins. Co.*, 210 Ariz. at 9 ¶ 10 (internal citations omitted). An insurer must be "given notice" and an opportunity to "contest its liability." *Morris*, 154 Ariz. at 120.

¶35 Here, Cincinnati argues that contingent *Morris* agreements subject an insured to abuse because they do not provide complete immunity from personal exposure if the agreement is later rescinded. Therefore, Cincinnati asks us to hold that contingent *Morris* agreements are per se unenforceable. We decline to do so.

¶36 Contingent *Morris* agreements are unenforceable if they deviate from the substantive principles enunciated in *Morris* due to fraud, collusion, unfairness, or unreasonableness—not because they are contingent. *See id.* at 121. We are unaware of any Arizona authority supporting a categorical ban on contingent *Morris* agreements. Courts review all *Morris* agreements on a case-by-case basis.

**B.**

¶37 The contingent *Morris* agreement here is enforceable. In the Agreement, Montano and Cravens assented to the following contingency:

> This Agreement shall be null and void and given the effect of rescission if a court of law determines that this Agreement or any provision of it precludes Plaintiff from pursuing his claim of respondeat superior liability against Casas in the Superior Court Action. But this Agreement shall not be null and void nor given the effect of rescission if a court of law determines,

13

on any other grounds independent of this Agreement, that
Casas is not vicariously liable for Defendant's actions.

Therefore, if a court determined that the Agreement itself released Casas from Cravens's respondeat superior claim, the ruling would rescind the Agreement. But if the claim should fail for any reason independent of the Agreement, it would remain enforceable. Cravens explained that the contingency provision was intended to protect against a court construing the Agreement's earlier promise not to execute against Casas's personal assets as a release of liability. Notably, at the time the Policy was executed, a dismissal of an employee with prejudice precluded a claim for respondeat superior against the employer. *See Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 106 ¶ 44 (2023).

¶38       *Morris* aims to protect insureds from "the sharp thrust of personal liability" due to an insurer's reservation of rights, and insurers from fraudulent, collusive, and unreasonable agreements. *See Parking Concepts, Inc. v. Tenney*, 207 Ariz. 19, 22 ¶¶ 13–15 (2004) (quoting *Morris*, 154 Ariz. at 118). An absence of apparent prejudice or unfairness generally indicates a lack of fraud or collusion. *See State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 201 (App. 1979); *see also Leflet v. Redwood Fire & Cas. Ins. Co.*, 226 Ariz. 297, 301 ¶ 15 (App. 2011) ("The overarching goal of *Morris* is to permit the insured and the insurer to balance their competing interests in an atmosphere of fairness and defined risk . . . ."). And allegations of unreasonable settlements generally require a showing of excessive pecuniary liability. *See Fid. Nat'l Title Ins. Co. v. Centerpoint Mech. Lien Claims, LLC*, 238 Ariz. 135, 142 ¶¶ 34–36 (App. 2015). Here, the contingency does not prejudice Cincinnati's rights, nor does it leave Montano devoid of protection because the triggering event is narrow in scope. Moreover, the triggering event has not occurred. But if it should, it would result in the exact relief Cincinnati requests—invalidation of the Agreement. Consequently, the *Morris* Agreement is enforceable. However, if Cincinnati establishes on remand that Montano was not engaged in Casas's business while using his mother's truck, it will not be liable for "any part" of the damages set forth in the *Morris* Agreement. *See Safeway Ins. Co.*, 210 Ariz. at 9 ¶ 10 ("If the insurer eventually succeeds in establishing that the claim is not covered by the policy, the insurer is not liable for any part of the settlement.").

**CONCLUSION**

¶**39**      For the foregoing reasons, we vacate the court of appeals' coverage ruling and ¶¶ 18–29 of its decision, affirm its ruling concerning the *Morris* Agreement, reverse the superior court's judgment and remand to it for further proceedings consistent with this Opinion.

¶**40**      We deny, without prejudice, the parties' requested attorney fees pursuant to A.R.S. § 12-341.01 because neither party is the successful party at this stage of the proceedings.