James H. HARTZELL, Beryl Hartzell, and Ross Hartzell, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 84–2592.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1985.

Decided April 10, 1986.

---

Denis R. Malm, Wachtel, Biehn & Malm, Lake Havasu City, Ariz., Paul Ulrich, Lewis & Roca, Phoenix, Ariz., for plaintiffs-appellants.

Elizabeth Jucius Dunn, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellee.

Before DUNIWAY, TANG, and FLETCHER, Circuit Judges.

DUNIWAY, Circuit Judge:

The Hartzells appeal from a summary judgment against them in their action against the United States for injuries resulting from an automobile accident involving Air Force Staff Sergeant Joni McDonald. The district court held that McDonald was not acting within the scope of her employment at the time of the accident and that the United States could not, therefore, be held liable under the doctrine of respondeat superior for her alleged negligence. We affirm.

## FACTS

The Air Force employed Sergeant McDonald as an administrative specialist. Her permanent duty station was Kirtland Air Force Base, near Albuquerque, New Mexico. From April 14 until April 27, 1981, she was assigned to temporary duty at Camp Mercury in Nevada. She was given authorization for temporary duty travel from Kirtland to Camp Mercury. Her orders also authorized her return to Kirtland at the end of her temporary duty assignment. The orders originally required that she travel by either commercial airlines or a government vehicle, but, at her request, they were amended to permit her to drive her own automobile. McDonald made the request for personal reasons. Reimbursement was limited to the costs she would have incurred had she used a commercial airline.

McDonald's work duties at Camp Mercury ended at 6:00 p.m., April 27, 1981. Before leaving, she asked for and received an additional day, April 29, in which to make the return trip to Kirtland. She wanted the time to visit Las Vegas and sightsee on her drive back to New Mexico. Under Air Force regulations, the additional day was leave or vacation time. She was ordered to

report for duty at Kirtland by 7:30 a.m. on April 30.

McDonald spent April 28, 1981, on personal recreation in and around Las Vegas. On April 29, 1981, she left Las Vegas, traveling south on U.S. Highway 93 toward Kingman, Arizona. From Kingman, she intended to travel east on Interstate 40 to Kirtland. She also considered taking a side trip off I–40 to visit the Grand Canyon. The auto accident with the Hartzells occurred before she reached the intersection with Interstate 40.

The district court found that McDonald departed from the direct route between Las Vegas and Kirtland to sightsee at the Grand Canyon. The record does not support this finding. The accident happened on U.S. Highway 93. The only road to the Grand Canyon that intersects McDonald's route is approximately one hundred fifty miles east of Kingman on Interstate 40. McDonald was, however, considering a sidetrip to the Grand Canyon.

The district court found that because McDonald "opted to travel by her own personal automobile, to travel over several days, and to sightsee off the direct interstate route," her journey was more for personal enjoyment than Air Force business. It also found that, because McDonald was on leave on the day of the accident, she was beyond the physical control of the Air Force, and, therefore, not acting within the scope of her employment.

## DISCUSSION

The Federal Tort Claims Act (FTCA) provides that the United States is liable for personal injuries caused by the negligence or wrongful acts of government employees who are acting within the scope of their office or employment. 28 U.S.C. § 1346(b). When an employee is a member of the military, his scope of employment is defined as "acting in the line of duty." 28 U.S.C. § 2671.

The question whether McDonald was acting within the scope of her employment is controlled by the law of the state in which the accident occurred. 28 U.S.C. § 1346(b);

*Williams v. United States*, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (per curiam); *Louie v. United States*, 9 Cir., 1985, 776 F.2d 819, 824. The "line of duty" standard does not expand scope of employment beyond that recognized under the state law of respondeat superior. *E.g., Lutz v. United States*, 9 Cir., 1982, 685 F.2d 1178, 1182; *Chapin v. United States*, 9 Cir., 1958, 258 F.2d 465, 468.

The district court's resolution of factual questions is reviewed under the "unless clearly erroneous" standard. Fed.R.Civ.P. 52(a); *Matter of McLinn*, 9 Cir., 1984, 739 F.2d 1395, 1398 (in banc). Its interpretation of state law is reviewed *de novo. Id.* at 1403; *Louie*, 776 F.2d at 822.

Under Arizona law an employee is considered to be acting within the scope of employment if he meets either of two related tests. The first, adopted from section 228 of the Restatment (Second) of Agency, states that the act of an employee is within the scope of employment only if: (1) it is typical of the kind of work the employee was hired to perform; (2) it occurs within the authorized time and space limits; and (3) it was intended at least in part to serve the master. *Anderson v. Gobea*, 1972, 18 Ariz.App. 277, 280, 501 P.2d 453, 456. The second holds an employer liable for the negligence of an employee if, at the time of the accident, the employee is: (1) subject to the employer's control or right to control; and (2) acting in furtherance of the employer's business. *Robarge v. Bechtel Power Corp.*, Ariz.App., 1982, 131 Ariz. 280, 640 P.2d 211, 214. *See State v. Superior Court*, 1974, 111 Ariz. 130, 524 P.2d 951, 953.

■ McDonald did not meet either of these tests at the time of the accident. She was an administrative specialist who performed mostly clerical duties. Driving her own vehicle for personal reasons was not an act typical of work she was hired to perform. Because the accident took place while McDonald was on leave, it also did not occur within the authorized time and space of her employment.

Air Force Regulation 177–103 allows travel time based on "when member could have departed, arrived, and returned by common carrier means...." Any additional travel time is charged as leave. Air Force Regulation 177–103 (Table 40–1). This method of calculating travel with leave is not at odds with Joint Travel Regulation M3050. It states only that service personnel are "deemed to be in travel status while performing travel away from their permanent duty station, upon public business, pursuant to competent travel orders...." This very general description is not inconsistent with the detailed Air Force regulations concerning leave taken in connection with authorized travel. We have recognized that the Air Force's distinction between leave and approved travel time may decide a case. *Berrettoni v. United States*, 9 Cir., 1970, 436 F.2d 1372, 1373–74.

Although McDonald's travel from a temporary duty station back to her permanent duty station was in some part intended to serve the Air Force, this factor alone is not sufficient to bring her within the scope of employment. She had sought and received permission to travel in her own vehicle for purely personal reasons. Under these circumstances, it cannot be said that her act of driving on that day was intended to serve the Air Force. McDonald was not acting within the scope of employment under the *Anderson* test.

McDonald also fails Arizona's control-based test for acting within the scope of employment. *See Robarge*, 640 P.2d at 214. Arizona courts considering it in the context of employees traveling to or from job sites have focused on the employer's right to control the employee's choice of vehicle, route and manner of travel, and right to impose work-related duties on the employee during the course of travel. *State v. Superior Court*, 524 P.2d at 954; *Robarge*, 640 P.2d at 214. The Air Force, as McDonald's employer, did not exercise control over these aspects of McDonald's conduct at the time of the accident. McDonald was originally ordered to travel by commercial airline or government vehicle, but, for personal reasons, sought to travel by her own car instead. The Air Force did not direct McDonald to follow a certain route or to drive in a particular manner. Nor did it request that she perform any service related duties en route. In similar cases, the Arizona courts have held that the employee was not acting within the scope of employment at the time of his or her alleged negligence. *State v. Superior Court*, 524 P.2d at 954 (Arizona had "no claim to or a remote interest in" a national guardsman travelling to a weekend training session in his own car and without orders to perform additional services or drive in particular manner along a prescribed route); *Robarge*, 640 P.2d at 214 (employee driving home at end of workday was not within the scope of employment because he was travelling in his own vehicle and without employer imposed obligations regarding route, manner of travel, or work-related duties.)

An additional factor supporting the district court's decision is that McDonald was on leave on the day of the accident. *See, e.g., Cooner v. United States*, 4 Cir., 1960, 276 F.2d 220, 225 ("[a] serviceman on leave or on pass cannot, normally, be said to be acting within the scope of his employment"). After concluding her duties at Camp Mercury, McDonald requested an extra day for sightseeing before returning to her permanent assignment at Kirtland. Air Force regulations charged this day as leave time. While on leave, McDonald was free to travel wherever and whenever she wished without regard for her employer's concerns. The Air Force's only interest in her during this period was that she report back to Kirtland on time. This single requirement does not create control over McDonald's conduct bringing her within the scope of employment. *See State v. Superior Court*, 524 P.2d at 954; *Robarge*, 640 P.2d at 214.

The Hartzells argue that the Air Force had the requisite right to control McDonald because of the unique relationship between a soldier and her military employer. They note that the Air Force had the right to

dictate McDonald's choice of vehicle and that she could only travel by her own car after receiving permission from her commanding officer. The Hartzells claim that the Air Force controlled her manner of driving by virtue of the Uniform Code of Military Justice (UCMJ), which holds military personnel accountable for their reckless operation of a vehicle. UCMJ § 111, 10 U.S.C. § 911, provides "[a]ny person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct." Finally, they point to the Air Force's authority to recall McDonald to her duties at any time as evidence of its right to impose work-related duties on McDonald at the time of the accident. On the basis of these peculiar conditions of military employment, the Hartzells conclude that McDonald's situation is distinguishable from similar nonmilitary situations in which the Arizona courts have found that an employee was acting outside the scope of employment while traveling to or from a distant job site. *State v. Superior Court,* 524 P.2d at 954; *Robarge,* 640 P.2d at 214.

The question is whether the unique characteristics of military service bring a soldier within the scope of employment in circumstances in which a civilian would be found to be acting outside the bounds of his employment. We have considered the issue directly or indirectly many times. We first encountered it in *Chapin v. United States,* 9 Cir., 1958, 258 F.2d 465, a California case in which a soldier had an automobile accident while traveling to a new duty station under orders authorizing use of his personal vehicle and leave en route. We held that under California's control-based doctrine of respondeat superior, the soldier was not acting within the scope of his employment at the time of the accident. *Id.* at 470–71. In reaching our decision, we refused to consider the military's unique authority over the soldier, finding instead that for purposes of respondeat superior, the status of a member of the military is similar to that of any private employee:

We discern no basis in the [FTCA] … nor in logic for making a distinction which would extend the scope and application of the doctrine of *respondeat superior* beyond that traditionally applied to private employers simply because the federal government in its military capacity finds itself in the role of employer.

*Id.* at 468 (footnote omitted). This language is not, as has been suggested, a result of some pecularities in California law. *See Garrett Freightlines, Inc. v. United States,* 9 Cir., 1976, 529 F.2d 26, 28–29. Later, in *McCall v. United States,* 9 Cir., 1964, 338 F.2d 589, we spoke even more clearly, stating that the proper means of analyzing torts involving military personnel is to strip the case of "its military overtones, such as, that [the serviceman] during his leave was subject to call to duty, and subject to the provisions of the Uniform Code of Military Justice and other applicable service regulations." *Id.* at 593. *See Chapin,* 258 F.2d at 468.

We have consistently relied on this precedent to hold that a soldier traveling between duty stations is not acting within the scope of employment notwithstanding the military's general right to control his activities. *Garrett Freightlines, Inc. v. United States,* 9 Cir., 1976, 529 F.2d 26, 28–29 & n. 1; *United States v. McRoberts,* 9 Cir., 1969, 409 F.2d 195, 197.

We recently faced another attempt to expand governmental liability for the acts of military personnel based on the military's general right to control their conduct. In *Louie v. United States,* 9 Cir., 1985, 776 F.2d 819, appellants claimed that the Government owed a duty to a motorist to control the actions of an intoxicated off-duty soldier. They argued that the military's complete authority over off-duty servicemen created the requisite "special relationship." We rejected this claim, holding that an injured party suing under the FTCA cannot create a "cause of action based on a military relationship where liability would not lie under state law." *Id.* at 826.

Other courts considering the issue have reached the same conclusion. *See, e.g., Bissell v. McElligott,* 8 Cir., 1966, 369 F.2d 115, 117–19; *Cobb v. Kumm,* 7 Cir., 1966, 367 F.2d 132, 134 & n. 5; *United States v. Eleazer,* 4 Cir., 1949, 177 F.2d 914, 918. *See also McSwain v. United States,* 3 Cir., 1970, 422 F.2d 1086, 1091–92 (dissent argued Hartzells' position here). *But see Hinson v. United States,* 5 Cir., 1958, 257 F.2d 178, 181. The Eighth Circuit, for example, has stated that

> a soldier on leave driving an automobile purely for his own enjoyment would not be brought within the [FTCA] by reason of the Code of Military Justice provisions.... [T]he unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment.

*Bissell,* 369 F.2d at 119.

We see no reason to depart from this standard. The FTCA only waives sovereign immunity "under circumstances where the United States, *if a private person,* would be liable." 28 U.S.C. § 1346(b) (emphasis added). A private employer does not have the military's right to exercise complete authority over its employees at all times. If we adopted the Hartzells' rationale for finding liability in this case, the United States would be liable for virtually any tort committed by a serviceman, whether he was on-duty, off-duty, or on leave at the time of the incident. This result is clearly inconsistent with the limited waiver of sovereign immunity Congress intended in the FTCA. *Lutz v. United States, supra,* 685 F.2d at 1183; *Bissell,* 369 F.2d at 118; *see Chapin,* 258 F.2d at 468.

Our decision and its treatment of the military aspects of this case are also consistent with Arizona law. Ordinarily, state courts are precluded from passing on the relevance of the soldier-employer relationship because the FTCA confers exclusive jurisdiction on the district court for suits alleging negligence by an employee of the United States government. 28 U.S.C.

§§ 1346(b), 2679(b). In *Driscoll v. Harmon,* 1979, 124 Ariz. 15, 601 P.2d 1051 (in banc), however, Arizona had the unusual opportunity to consider the question. In *Driscoll,* an enlisted man on active duty with the Air Force had just finished a duty shift and was driving to his off-base residence in his personal automobile when he struck a pedestrian. The accident occurred on the Air Force base. The pedestrian sued Harmon in state court and Harmon moved to dismiss the complaint on the grounds that he had been acting within the scope of employment at the time of the accident and that the state suit was therefore barred by the exclusive remedy provisions of the FTCA. 28 U.S.C. §§ 1346(b), 2679(b).

The Arizona Supreme Court held that Harmon was not acting within the scope of employment when the accident occurred. *Driscoll,* 601 P.2d at 1053. In so doing, the court analyzed the case without reference to the military's right to control its soldier/employee, *id.* 601 P.2d at 1052–53, and implicitly rejected the dissent's contention that Harmon was acting within the scope of employment because the Air Force retained the right to control Harmon's activities on the base. *Id.* 601 P.2d at 1054 (Cameron, J., dissenting). *See also State v. Superior Court,* 524 P.2d at 955 (court refuses to consider state's right to control guardsman under UCMJ because he was off-duty when the accident occurred). The Arizona court's decision supports our decision that the military's inherent and unique authority to control Staff Sergeant McDonald does not, in this case, subject the United States to liability.

Our decision here is not contrary to *Lutz v. United States,* 9 Cir., 1982, 685 F.2d 1178. In *Lutz,* we held that an Air Force servicemember living on base was acting within the scope of his employment when he failed to control his dog as required by Base Regulations. Our rationale was that the scope of military employment includes performance of duties directly or indirectly associated with normal and regular military activities. *Id.* at 1183. Because base

security is a regular military activity and base residents are specifically delegated the duty of controlling their pets as part of that activity, we concluded that the serviceman's omission was within the scope of employment. *Id.*

Although the *Lutz* decision contains dicta mandating consideration of "the special factors characteristic of military activity and discipline" in determining the scope of employment, *id.* at 1183, it also recognizes the uniqueness of military base incidents and the danger that expanding liability beyond similar incidents would "impose upon the military a liability far broader than that of a private employer, contrary to the limited waiver intended by the FTCA." *Id.* We agree. Where, as here, the employee's conduct did not involve a regular and specific military activity, the special characteristics of military employment do not bring the employee's conduct within the scope of his employment for purposes of the FTCA. This rule is consistent with both Ninth Circuit precedent, *see, e.g., Chapin,* 258 F.2d at 468; *McCall,* 338 F.2d at 593, and Arizona law. *See Driscoll,* 601 P.2d 1051.

Finally, the Hartzells argue that McDonald was acting within the scope of her employment under the "dual purpose" rule. It holds that an employee is acting within the scope of his employment if he is going to or coming from the job site and service to the employer is at least a concurrent cause of his trip. *Marks' Dependents v. Gray,* 251 N.Y. 90, 167 N.E. 181, 183 (1929). The rule was developed in workmen's compensation cases and has been applied by Arizona courts many times in that setting. *See, e.g., Greenlaw Jewelers v. Industrial Commission,* Ariz.App., 1980, 127 Ariz. 362, 621 P.2d 49, 51; *Stoddard v. Industrial Commission,* Ariz. App., 1975, 23 Ariz.App. 235, 532 P.2d 177, 180.

The Arizona courts have relied on the dual purpose rule only once in the respondeat superior setting, *Anderson v. Gobea,* 1972, 18 Ariz.App. 277, 501 P.2d 453, 458–59, and have refused to extend the rule

beyond the facts of that case. *Faul v. Jelco, Inc.,* Ariz.App., 1979, 122 Ariz. 490, 595 P.2d 1035, 1037–38. Since then they have also declared their reluctance to apply workmen's compensation principles in tort cases. *Driscoll,* 601 P.2d at 1052; *Robarge,* 640 P.2d at 213–14. In *Robarge,* the Arizona Court of Appeals stated that "the rules adopted for workmen's compensation cases should not be mechanically applied in negligence cases...." *Robarge,* 640 P.2d at 213. In defining the scope of employment in a tort case, as opposed to a workmen's compensation case, "the doctrine of respondeat superior is the standard against which that determination shall be made, and other concepts borrowed from the area of workmen's compensation law can be considered but will not be controlling." *Id.* 640 P.2d at 214. *See Driscoll,* 601 P.2d at 1052. Thus, the issue of whether Staff Sergeant McDonald was acting within the scope of her employment at the time of the accident turns upon application of the general respondeat superior tests of *Anderson* and *Robarge* rather than upon Hartzells' proof of McDonald's dual purpose in making the trip. Under these tests, McDonald was not acting within the scope of employment when the accident occurred.

AFFIRMED.