NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 16 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KATHERINE KISER,

        Plaintiff - Appellant,

  v.

UNITED STATES BUREAU OF INDIAN AFFAIRS,

        Defendant - Appellee,

and

TERRANCE JACKSON, DOES, 1-5,

        Defendants.

No. 24-2663

D.C. No.
9:22-cv-00181-DWM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted May 14, 2025
San Francisco, California

Before: S.R. THOMAS, M. SMITH, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge S.R. THOMAS.

      Plaintiff Katherine Kiser appeals the district court's grant of summary

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

judgment to the United States in Kiser's Federal Tort Claims Act (FTCA) lawsuit seeking compensation for injuries that Kiser sustained from an attack by a dog owned by an employee of the U.S. Bureau of Indian Affairs (BIA) who was living in BIA housing. Kiser brought negligence, public nuisance, and negligence per se claims, and for all three claims, she advanced two theories: that the government was liable (1) on a theory of premises-type liability as a landlord, through its alleged mismanagement of a BIA-owned house; and (2) for the negligence of BIA employee Terrance Jackson, whose dog attacked Kiser, i.e., a theory of respondeat superior. We review the grant of summary judgment de novo. *Sanders v. Cnty. of Ventura*, 87 F.4th 434, 437 (9th Cir. 2023). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

1. As to Kiser's first theory, the district court properly rejected Kiser's claims predicated on a landlord-tenant relationship. Under the FTCA, the United States is liable to Kiser "if a private person[] would be liable to" Kiser under Montana law. 28 U.S.C. § 1346(b)(1).

Beginning with her negligence claim, under Montana law a landlord is only liable "for physical harm to persons outside of the land caused by activities of the lessee" if "the lessor at the time of the lease consented to such activity or knew that it would be carried on" and "the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary

to safety would not be taken." *Knapton ex rel. E.K. v. Monk*, 347 P.3d 1257, 1260 (Mont. 2015) (emphasis omitted) (quoting *Larson-Murphy v. Steiner*, 15 P.3d 1205, 1226 (Mont. 2000), *superseded on other grounds by* Mont. Code Ann. § 27-1-724); *see also* Restatement (Second) of Torts § 379A. Here, Kiser presented no evidence that the BIA consented to Jackson owning a pit bull at the time he started living in the BIA-owned house. Furthermore, there is no evidence that anyone at the BIA was aware that Jackson owned a vicious dog. *See Knapton*, 347 P.3d at 1262 (finding that a landlord was not liable because of the lack of "evidence demonstrating that [the landlord] knew the [tenants'] dogs had vicious propensities"). These same points resolve Kiser's public nuisance claim based on the landlord-tenant relationship. *See Larson-Murphy*, 15 P.3d at 1226 (similarly requiring the landlord's consent to the activity or knowledge or reason to know that it will be carried on).

Lastly, Kiser's negligence per se claim fails as to her premises liability theory. "In order to establish *negligence per se*, a plaintiff must prove," among other requirements, that "the statute was intended to regulate members of defendant's class." *Prindel v. Ravalli Cnty.*, 133 P.3d 165, 175 (Mont. 2006). Here, the government in its capacity as a landlord does not meet this requirement because none of the statutes or ordinances that Kiser points to are "intended to regulate" landlords. *Id.*

2. However, the district court erred in granting summary judgment to the

United States for Kiser's claims predicated on her second theory of liability—the government's vicarious liability for the alleged negligence of Jackson. The FTCA allows a plaintiff to recover money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Whether an employee was acting within the scope of employment is determined by "the principles of *respondeat superior* of the state in which the alleged tort occurred," here Montana. *Wilson*, 87 F.3d at 1076 (quoting *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)). Under Montana law, "[a] tortious act occurs within the scope of employment if the act was either expressly or implicitly authorized by the employer or was incidental to an expressly or implicitly authorized act." *L.B. v. United States*, 515 P.3d 818, 822 (Mont. 2022). And "[a]n act may be incidental to an authorized act, although considered separately it is an entirely different kind of act." *Id.* (brackets in original) (quoting Restatement (Second) of Agency § 229 cmt. b). However, "an employee's actions only come within the scope of employment if they are motivated in part by a desire to serve the employer to an appreciable extent." *Id.* at 825.

In this case, and although Jackson's ownership of the dog did not relate to his work on BIA irrigation systems, based on Jackson's unique living arrangement a factfinder could reasonably conclude that Jackson's maintenance of the house was

within the scope of his employment. *See id.* at 826 (explaining that "when two or more reasonable inferences may be drawn regarding the scope of employment, the question is one left for the trier of fact"). Jackson's tenancy and maintenance of the house were expressly authorized by the BIA. He had to be a BIA employee to live there. And according to Jackson, the BIA allowed him to live at the property in exchange for Jackson improving the property. Further, a trier of fact could reasonably find that Jackson's tenancy was "motivated in part by a desire to serve the employer" by improving the property, which had fallen into disrepair. *Id.* The dissent concludes otherwise, but the facts are genuinely disputed.

The next question is whether Jackson's failure to control his pit bull at the BIA-owned house was incidental to his tenancy. Under our decision in *Lutz v. United States*, 685 F.2d 1178, 1182–83 (9th Cir. 1982), a reasonable factfinder could so find. In *Lutz*, Airman Harris voluntarily lived on an Air Force base in Montana and owned a dog that attacked his neighbor's two-year-old daughter. *Id.* at 1181. We held that Harris was acting within the scope of his employment when he failed to control his dog because under a base regulation, he had "a mandatory, affirmative duty to protect the health and safety of all base residents by controlling the animal." *Id.* at 1183. As in *Lutz*, the BIA has a housing policy, which applied to Jackson, providing that "[p]ets are the responsibility of the owners" and specifically prohibiting pit bulls. Thus, as in *Lutz*, Jackson had "a mandatory, affirmative duty

5                                                                      24-2663

to protect the health and safety of [Flathead Indian Reservation] residents by" controlling his animal. *Id.*

And just as we concluded in *Lutz* that Harris's control of his dog was motivated in part to serve the Air Force's safety interests, given the specific nature of Jackson's living arrangement a factfinder could reasonably conclude that Jackson's control of his dog was motivated in part to serve the BIA's safety interests. As the BIA Housing Handbook states, a pit bull "represent[s] a high liability risk for the Government." Thus, there is a genuine dispute whether "controlling the dog was within the scope of [Jackson's] employment." *Id.* at 1183. Analogous to the nature of the employment in *Lutz*, a trier of fact could reasonably infer that Jackson's employment relationship with the BIA extended to his at-home hours based on his arrangement to maintain the BIA-owned house as a condition both of living there and of his BIA employment more generally.

The dissent would read *Lutz* as a case "explicitly limited" to the military base context, but we have never held that *Lutz* is so limited. Rather, in *Lutz* we found that "[m]ilitary housing presents a unique situation" based on certain "special factors," *id.*, and analogous special factors are present in this case: (1) both Jackson and Airman Harris lived in government-owned housing; (2) both were obligated to comply with government housing policies relating to controlling pets; and (3) both were subject to repercussions if they failed to comply with the policies (Jackson was

6                                                          24-2663

ordered to leave the rent-free property after the incident with Kiser.). And as in *Lutz*, a factfinder could reasonably conclude that Jackson's employment relationship extended to his "at-home hours" given the unique nature of his living arrangement at the BIA-owned home. *Id.* Our decision in *Hartzell v. United States*, 786 F.2d 964 (9th Cir. 1986), is inapposite. That case involved a military employee who caused an accident when driving her own vehicle for personal reasons and while on leave, outside "the authorized time and space of her employment." *Id.* at 966. Given its very different facts, and unlike this case, it did not present a genuine dispute of material fact on the scope of employment question.

Because there is a genuine dispute whether Jackson was acting within the scope of employment, the district court erred in dismissing Kiser's negligence claim with respect to her vicarious liability theory. Jackson owed Kiser a common law duty to exercise reasonable care in controlling his pit bull, and the remaining negligence elements are for the trier of fact.

Likewise, the district court erred in granting summary judgment to the government on Kiser's public nuisance claim as to her vicarious liability theory. Under Montana law, a public nuisance is "*anything* that is injurious to health, indecent or offensive to the senses," *Bennett v. Hill*, 342 P.3d 691, 695 (Mont. 2015) (brackets omitted) (quoting Mont. Code Ann. § 27-30-101(1)), and that "affects an 'entire community or neighborhood or any considerable number of persons.'" *Tally*

*Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC*, 228 P.3d 1134, 1140 (Mont. 2010) (quoting Mont. Code Ann. § 27-30-102(1)).  As the district court recognized, Kiser raised a genuine dispute of fact whether Jackson's pit bull "terrorized" other neighbors so as to constitute a public nuisance.

Finally, as to the vicarious liability theory, reversal is likewise required on Kiser's negligence per se claim.  Under Montana law, a negligence per se claim requires that "(1) the defendant violated the particular statute; (2) the statute was enacted to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the plaintiff's injury is of the sort the statute was enacted to prevent; and (5) the statute was intended to regulate members of defendant's class." *Prindel*, 133 P.3d at 175 (quoting *Schwabe ex rel. Est. of Schwabe v. Custer's Inn Assocs., LLP*, 15 P.3d 903, 908 (Mont. 2000)).  Lake County Ordinance Resolution 861, which makes it a misdemeanor to own a vicious dog, provides a proper basis for Kiser's negligence per se claim, and there is a genuine dispute of material fact whether Jackson violated the ordinance.

The district court concluded otherwise on the ground that the Ordinance is a strict liability provision, which is outside the FTCA's waiver of sovereign immunity. *See Laird v. Nelms*, 406 U.S. 797, 798–99 (1972); *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985).  But the Ordinance provides that "[i]f the dog is determined to be a 'vicious dog' by law enforcement, the owner of the dog *may* be

ticketed for a misdemeanor offense."  There is no indication that this Ordinance imposes strict liability.  The district court also concluded that the Ordinance did not provide a basis for a negligence per se claim because the BIA as a landlord is not a member of the class that the Ordinance is intended to regulate.  But while the BIA is not a member of the class, Jackson is, which is what remains relevant under Kiser's theory of respondeat superior liability.

For the foregoing reasons, we affirm the grant of summary judgment as to Kiser's claims based on the landlord-tenant relationship.  But we reverse and remand for further proceedings Kiser's claims based on Jackson's alleged negligence within the scope of his employment.  The parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**

*Kiser v. U.S. Bureau of Indian Affs.*, No. 24-2263

S.R. THOMAS, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly granted summary judgment on Kiser's claims predicated on a premises liability theory.

I respectfully disagree that the district court erred in granting summary judgment to the United States for Kiser's claims predicated on vicarious liability. Jackson's tenancy was not an expressly or implicitly authorized act as part of his employment and Jackson's acts and omissions in controlling his dog were not incidental to his employment as a irrigation maintenance worker. The United States was therefore not vicariously liable for negligence, public nuisance, or negligence per se.

I

Jackson's tenancy was not itself an employment relationship with the Bureau of Indian Affairs ("BIA"), nor was it authorized as part of his employment. It is undisputed that the BIA expressly authorized Jackson to live in government housing, but that fact alone does not make Jackson's tenancy part of his employment relationship. Most landlords expressly authorize their tenants to live in their housing in return for rent (or here, upkeep work). Jackson was employed by the BIA as a ditch rider to perform irrigation maintenance work and his tenancy does not bear the hallmarks of an employment relationship.

Under Montana law, "[a]n individual is an employee of another when that other has the right to control the details, methods, or means of accomplishing the individual's work." *Butler v. Domin*, 15 P.3d 1189, 1194 (Mont. 2000).  Important factors include: "(1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire." *Id.* at 1194-95.  None of these factors support finding a right to control in Jackson's tenancy relationship.  The BIA never inspected the house Jackson lived in or supervised Jackson's upkeep work.  Jackson never even discussed what kind of work he would do on the house with the BIA.  There is no evidence that the BIA paid Jackson for his work (except by allowing him to live in the house), or that the BIA provided equipment for upkeep work.  And the BIA could not evict Jackson for failure to do satisfactory maintenance on the house–they could only evict him.  Jackson's tenancy was therefore not an employment relationship itself.[1]

The scope of Jackson's employment relationship with the BIA then consists

---

[1]    The fact that the BIA did not have the right to control the method or means of Jackson's upkeep work, also undermines the rationale for vicarious liability.  *See Brenden v. City of Billings*, 470 P.3d 168, 173 (Mont. 2020) (explaining that "the 'ability to exercise control over . . . employees' work-related conduct enables[,] [and provides incentive for,] the employer to take measures to reduce the incidence of tortious conduct" (alteration in original) (quoting Restatement (Third) of Agency § 7.07 cmt. b)).  When an employer lacks control over the actions of its employee, as the BIA did regarding Jackson's upkeep work, the reasons to hold the employer vicariously liable are diminished.

of any acts "expressly or implicitly authorized" by the BIA as part of his irrigation maintenance job, or acts "incidental to an expressly or implicitly authorized act." *L.B. v. United States*, 515 P.3d 818, 822 (Mont. 2022). Jackson's tenancy was not an expressly authorized act because the BIA did not "specifically direct[] or authorize[]" Jackson "to perform" upkeep as part of his irrigation maintenance job. *Brenden*, 470 P.3d at 173. And Jackson's tenancy was not an implicitly authorized act because it was not "reasonably necessary or customary under the circumstances to the performance of" his expressly authorized duties as an irrigation maintenance worker. *Id*. No other employees working on the irrigation project lived in government housing. The district court thus correctly held that "[w]hile Jackson agreed to perform upkeep on the Property in order to live there, that was not part of his employment with the BIA as a ditch rider."

Whether Jackson's tenancy was incidental to his employment as an irrigation maintenance worker is inconsequential here. The majority reasons that Jackson's tenancy falls within the scope of employment because it was "motivated in part by a desire to serve the employer," which is part of the test for whether an act is incidental to an expressly or impliedly authorized act. *See Brenden*, 470 P.3d at 174 (an act is within the scope of employment if it is "incidental to the performance of an expressly or implicitly authorized act and at least partially motivated by the employee's intent or purpose to serve the employer's interest").

But even if Jackson's tenancy is incidental to his employment as an irrigation maintenance worker, that would not support finding vicarious liability. Jackson's acts or omissions in controlling his dog must be incidental to an expressly or implicitly authorized act, not incidental to an act that is incidental to an expressly or implicitly authorized act (his tenancy). *See id.*

## II

For the government to be vicariously liable, Jackson's acts or omissions in controlling his dog must have been within the scope of his employment as an irrigation maintenance worker. They were not. There is no evidence that the BIA expressly authorized Jackson to have a dog at all, let alone as part of his job. There is also no evidence that having a dog was "reasonably necessary or customary" to perform irrigation maintenance work. *Brenden*, 470 P.3d at 173.

Lastly, Jackson's ownership and control of his dog were not incidental to his employment as a ditch rider because no facts indicate that these acts "arose out of and were committed during the furtherance," *L.B.*, 515 P.3d at 823, of authorized acts or were in any way "motivated by a desire to serve" the BIA as his employer, *id.* at 825. Jackson took the dog from his grandson as a favor and did not use the dog for anything work-related. Further, Jackson was unaware of any impact that owning or controlling the dog would have on his employer, including that he was violating the BIA's housing policy that banned pit bulls.

Our reasoning in *Lutz v. United States*, 685 F.2d 1178 (9th Cir. 1982) does not contradict the conclusion that Jackson's control of his dog was not incidental to his employment. *Lutz* involved the failure of an Airman living on an Air Force base to control his dog and does not apply outside the military context. *See id.* at 1181. We explicitly limited *Lutz*'s holding to the "unique situation" of military housing, noting that maintaining "base security" was a "regular military activity" that "raise[d] special factors peculiar to the military employment situation." *Id.* at 1183.

Since it was published, we have repeatedly interpreted *Lutz* to be limited to the military base security context. *See Hartzell v. United States*, 786 F.2d 964, 970 (9th Cir. 1986) (holding that *Lutz* "recognizes the uniqueness of military base incidents and the danger that expanding liability beyond similar incidents would" expose the government to broader liability than intended); *Washington v. United States*, 868 F.2d 332, 334 (9th Cir. 1989) (noting that the case "involve[d] the same considerations that governed the court in deciding *Lutz*," namely, the "military duty to assure security in military housing"); *Doggett v. United States*, 858 F.2d 555, 560 (9th Cir. 1988) ("applying the reasoning of *Lutz*," to determine that a "comparable security regulation" imposed a "specific military duty" that did "not reach off-base conduct").

Further, the "special factors peculiar to the military employment situation"

that *Lutz* relies on are not present in this case. 685 F.2d at 1183. The "special factors" that *Lutz* discusses occur because the "employment relationship of residents of military bases continues even during the off-duty, at-home hours" and a soldier at home may still have "a specifically assigned duty enforced through the threat of military discipline" to enforce base security, which is a "regular military activity." *Id.* In *Hartzell*, we clarified that when an "employee's conduct did not involve a regular and specific military activity, the special characteristics of military employment do not bring the employee's conduct within the scope of his employment." 786 F.2d at 970.

Here, Jackson's conduct clearly did not "involve a regular and specific military activity." *Id.* Whether or not Jackson's situation resembles any of the facts of *Lutz*, the fact that Jackson was not in the military, the BIA was not enforcing "base security," and Jackson was not "subject to military discipline"[2] demonstrate that no "special factors peculiar to the military employment situation" apply to him. *Lutz*, 685 F.3d at 1183.

In short, the principles of *Lutz* do not apply outside of the military base

---

[2] The majority reasons that both Jackson and the Airman in *Lutz* were subject to repercussions for failing to comply with their employer's policies. Jackson could be evicted from his housing if he did not follow the BIA's housing policy. But there is no indication that Jackson faced employment-related discipline akin to the "military discipline" contemplated in *Lutz*. 685 F.3d at 1183.

security context. Because Jackson was a civilian government employee living outside of a military base, *Lutz* does not determine what acts fell within the scope of Jackson's employment. Jackson's dog ownership was not incidental to his employment.

## III

Because Jackson's acts and omissions in controlling his dog did not fall within the scope of his employment as an irrigation maintenance worker, the district court was correct to grant summary judgment on Jackson's claims for negligence, public nuisance and negligence per se predicated on a theory of vicarious liability. I would affirm the district court's thorough and well-reasoned opinion in full.

For these reasons, I respectfully dissent in part.